FILED
IN CLERKS OFFICE
2004 OCT 25  A 11: 27
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GENERAL MOTORS CORPORATION,** a Delaware corporation,<br><br>*Plaintiff,*<br><br>vs.<br><br>**CADILLAC CITY, INC.,** a Massachusetts corporation,<br><br>*Defendant.* | CIVIL ACTION NO. 04 cv 11926 REK |

### AFFIDAVIT OF CHARLES KARYANIS IN OPPOSITION TO GM'S MOTION FOR PRELIMINARY INJUNCTION

I, Charles Karyanis of 4 Hutchinson Lane, Quincy, MA, under oath, hereby depose and say as follows:

1. I am the President and Treasurer of Cadillac City, Inc., a corporation organized and existing under the laws of the Commonwealth of Massachusetts. I have been the president of this corporation since at least 1979.

2. The Corporation's principal place of business has been located at 186 Msgr. O'Brien Highway in Cambridge, Massachusetts (in Lechmere Square) since its incorporation in August of 1979.

3. In approximately 1974, I purchased the used car dealership located at 186 Msgr. O'Brien Highway, Cambridge, Massachusetts, from a man named Floyd Ford who had a corporation or proprietorship called "Lechmere Motor Discount", but who at that time operated the dealership under the name "Cadillac City".

4. At the time that I purchased the subject business, Mr. Ford told me, and I had also information and belief, that he had operated the used car dealership under the name "Cadillac City" for the previous ten (10) years, since 1964. He had signs on the used car lot at 186 Msgr. O'Brien Highway similar to the main sign which now exists on that lot which bore the name "Cadillac City" in large letters. On information and belief, Mr. Ford sold used Cadillacs through his said dealership and sold other used cars as well.

5. I continued to operate essentially the same existing used car dealership under the name "Cadillac City" until August of 1979 when I formed a corporation called "Drive-A-Way, Inc.", which also operated said business at 186 Msgr. O'Brien Highway under the d/b/a "Cadillac City". In October of 1980 the corporate name was changed from "Drive-A-Way, Inc." to "Cadillac City, Inc.". True copies of the Articles of Organization of Drive-A-Way, Inc., the Articles of Amendment, and the Certificate of Correction (adding the word "Monsignor" to the address) for said Corporation are attached hereto as Exhibit "A". (10 Pages).

6. The used car dealership office building located on 186 Msgr. O'Brien Highway has remained at the used car lot since at least 1974, and on information and belief since 1964, with essentially the same prominent, large blue signs reading in white letters "Cadillac City" in the same place attached to all four sides of the office building as shown in the color photographs enclosed with GM's Motion for Preliminary Injunction and their Verified Complaint as Exhibit "E".

7. Although I dealt with a number of new car Cadillac dealerships over many years, from 1974 until 1996 and said dealers clearly were aware that my Corporation did business under the name "Cadillac City", I never received any complaint from anyone associated with General Motors concerning the use of that name.

8. In approximately 1996 I received a call from GM's legal department stating that they wanted us to give up the name "Cadillac City". I responded to them that I was not going to give up the name "Cadillac City" since we had been incorporated as "Cadillac City, Inc." since the 1970s, and that General Motors could buy the name from us. The General Motors representative responded that GM was not interested in buying the name, but they felt we were in violation of trademark in using their crest and they asked me to remove the crest from our signage which I said I would and did. It was my understanding at that time that the matter was settled in that fashion.

9. I did not hear from anyone at General Motors again until receiving their letter dated May 25, 2004 that is attached to GM's verified complaint as Exhibit F. I responded to them with a return letter on June 8, 2004.

10. Cadillac City, Inc. registered the internet domain name "CADILLACCITY.COM" on January 3, 2000.

11. In addition to the signage on the Corporation's used car lot on Msgr. O'Brien Highway in Cambridge, Massachusetts and the domain name (above), the Corporation has dealer licenses from the City of Cambridge under the name "Cadillac City, Inc.", a number of dealer registrations and dealer plates in the name of Cadillac City, Inc., yellow page and other advertising in the name "Cadillac City, Inc.", and the Corporation's bank accounts, lines of credit, and credit cards, as well as its stationary, phone messaging, and other business necessities in the name of "Cadillac City, Inc.". All of this has been true since at

least 1980 and before then. The time and expense necessary to change all of these things would be at enormous cost to our small business.

12. Over ninety percent (90%) of the car sales conducted by Cadillac City, Inc. are made over the phone on a dealer-to-dealer wholesale basis with other car dealers without any consumer involvement in the transactions. Cadillac City buys and sells multiple brands of pre-owned automobiles, and most of these transactions involve makes (brands) other than Cadillacs. We sell a large number of Lexis, BMW, Audi, Volkswagen, and other premium brands. In the early 1980s the number of used Cadillacs bought and sold by Cadillac City, Inc. diminished considerably because of increases in the price of gasoline.

13. If we were to stop answering telephone calls with the name "Cadillac City" immediately, and without an opportunity to advise the many dealers with whom we do business of a name change, we would suffer a significant loss of business.

14. I have read the Verified Complaint filed by GM in this lawsuit. The following are examples of misstatements made by GM with my comments regarding same (this list is not inclusive):

Paragraph 11: "GM discovered in May 2004 that Defendant is in the business of operating an automobile dealership at 186 Msgr. O'Brien Highway, Cambridge, MA."

My comment: GM told me in the mid-1990s that they knew that Cadillac City, Inc. was in said business using the name Cadillac City, and in effect told me that what they wanted was for us to cease using the Cadillac crest, which we did. Also, on information and belief, it is impossible for me to believe that GM did not know about the existence of our used car dealership from 1974 until 2004- a period of 30 years or more.

Paragraph 16: "Defendant's misappropriation of GM's world-famous trademark CADILLAC in the internet domain name CADILLACCITY.COM evidences Defendant's bad-faith intent to profit from the misuse of the GM Trademarks."

My comment: We registered the domain name CADILLACCITY.COM because that tracked our corporate name "Cadillac City, Inc." and is how our (mostly dealer) customers identify our business and how they have identified it for over 30 years. Cadillac City, Inc. had no intent, bad-faith or otherwise, to profit from the use of GM's Trademarks. The Corporation's business started years ago using the name "Cadillac City" as a descriptor of a significant number of used vehicles which it sold at that time. As times changed and the market changed the makes (brands) of vehicles sold changed.

Paragraph 36: "Defendant has used counterfeits of the GM Trademarks knowing that the marks used are counterfeits and with the intent to use counterfeits of the GM Trademarks."

My Comment: As pointed out above, we simply continued the use of the name "Cadillac City" from 1974 forward to this date as it had been established by the former

3

owner of the business, Floyd Ford, from whom we purchased the business in the 1970s. If we had known that GM believed that we were engaging in some form of "counterfeit" early on, we would not have built our customer base around the use of the name "Cadillac City".

Paragraph 45: "Defendant, with knowledge of and with intentional disregard of GM's rights, continues to advertise, promote, and sell services and products using the GM Trademarks or counterfeits and confusing imitations thereof. Such acts by Defendant have caused and continue to cause confusion in Michigan as to the source and/or sponsorship of Defendant's products and services."

My comment: Our Corporation, Cadillac City, Inc. does not do any substantial business in the state of Michigan. We buy and sell used automobiles on a dealer-to-dealer basis primarily in Massachusetts and New England. On information and belief, even those consumer transactions engaged in by Cadillac City, Inc. (less than ten percent (10%) of our business) do not cause any confusion, even in Cambridge, Massachusetts, as to the source or sponsorship of the cars we sell as the make (brand) is well marked on the cars and well known to the consumer. As can easily be seen from the photographs attached to the Plaintiff's Complaint, none of the vehicles that we offer for sale (BMW, Lexus, Audi, Volkswagen) are disguised as Cadillacs. I have never known a consumer to come in and buy another brand of automobile based on the misunderstanding that the car was manufactured or sold by GM.

15. As evidenced by Exhibit "B", attached hereto, Cadillac City, Inc. has continuously conducted business in Massachusetts under that name and filed its annual reports under that name since June 20, 1980 through October 6, 2004. Also attached hereto as Exhibit "C" is a Certificate of Good Standing and Corporate Existence dated October 6, 2004, indicating that Cadillac City, Inc. was organized on August 27, 1979 and is in good standing with the Secretary of the Commonwealth.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 21 DAY OF OCTOBER, 2004.

_____
Charles Karyanis

## CERTIFICATE OF SERVICE

I, Edward F. George, Jr., counsel for the Defendant, Cadillac City, Inc. hereby certify that service of a true copy of the foregoing **Affidavit of Charles Karyanis In Opposition to GM's Motion for Preliminary Injunction** has this day been made upon the Plaintiff, General Motors Corporation, by delivering copies thereof to its counsel of record, by Federal Express, as follows: Thomas P. McNulty, Esq. Banner & Witcoff, Ltd. 28 State Street, 28th Floor, Boston, MA. 02109 and to its co-counsel Gregory D. Phillips, Esq. Howard, Phillips & Andersen, 560 E., 200 S., Suite 300, Salt Lake City, Utah 84102.

Date October 22, 2004

Edward F. George, Jr.