IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GENERAL MOTORS CORPORATION,** a Delaware corporation, *Plaintiff,* vs. **CADILLAC CITY, INC.,** a Massachusetts corporation, *Defendant.* | Civil Action No. 04-11926 REK **Judge Robert E. Keeton** |

# GM'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendant Cadillac City ("Defendant") makes essentially four arguments in opposition to GM's Motion for Preliminary Injunction. All four must be rejected.

First, Defendant argues that because Defendant has been operating the business under the name "Cadillac City" for several years, GM is guilty of laches. As set forth below, laches does not begin to operate until GM's legal department obtains knowledge of the infringement, and GM did not know of Defendant's misappropriation of the GM Trademarks until May of 2004 when GM immediately sent out a cease and desist letter. Defendant's assertion that the GM Legal Department contacted Defendant in 1996 is not supported by a single document and appears to be nothing more than an after-the-fact creation that first arose during settlement discussions a few weeks ago after GM filed this lawsuit. Moreover, laches is not a defense to precise copying and intentional infringement. Defendant's argument is no more persuasive than that made by a thief who has been stealing for thirty years complaining that he cannot now be prosecuted because he should have been caught years ago.

Second, Defendant's reliance on General Motors v. Cadillac Marine is misplaced. This 1964 case is easily distinguishable and is old (and bad) law in light of, among other things, the enactment of the Federal Anti-Dilution Act in 1996.

Third, Defendant's assertions that numerous others infringe the trademark CADILLAC® provides no defense. As Professor McCarthy makes clear, such an argument "is no more persuasive than that of the drunken driver who pleads to be let off because there are 'lots of other drunk drivers on the road--why pick on me?'" McCarthy on Trademarks and Unfair Competition § 17:17 (hereinafter "McCarthy").

Finally, Defendant's argument that Defendant is a small, independent used car dealership hidden on a corner of Lechmere Square may explain why GM did not discover Defendant until 2004, but it does not provide a defense to Defendant's misappropriation of CADILLAC®. There is no *de minimis* exception to the Lanham Act. As Judge Posner eloquently articulated:

> Small local businessmen of good repute do not have a license to steal trademarks from large nonresident corporations, and the amount of harm that the infringer inflicts goes to the amount of damages rather than to his liability for damages; the trademark laws do not excuse modest infringements by petty pirates.

General Electric Co. v. Speicher, 877 F.2d 531, 537 (7th Cir. 1989) (emphasis added)

## I.   DEFENDANT'S LACHES AND ACQUIESCENCE ARGUMENTS FAIL.

Defendant argues that because it has been using "Cadillac City" for several years, GM is barred from enforcing GM's trademark rights. Defendant's argument fails for several reasons.

### A.   The First Time that the GM Legal Department Knew About Defendant's Misappropriation of "Cadillac City" Was in May 2004.

As discussed in detail below, the case law makes clear that laches requires knowledge by GM's legal department and some kind of acquiescence. As set forth in both the Verified Complaint and the Declaration of Charles H. Ellerbrock submitted herewith, the first time that GM's legal department became aware of Defendant's misappropriation of "Cadillac City" was in

2

May 2004. GM immediately thereafter sent out its standard Cease and Desist Letter on May 25, 2004. See Exhibit F to GM's Memorandum in Support of Motion for Preliminary Injunction.

Defendant's assertion that Mr. Karyanis "received a call from GM's legal department" in "approximately 1996" [Affidavit of Charles Karyanis at ¶ 8] appears to be an after-the-fact creation that arose for the first time a few weeks ago in settlement discussions when the parties were discussing the legal effect of Defendant's allegedly long-standing misappropriation of "Cadillac City." Curiously, Defendant conveniently fails to produce a single document to support this spurious assertion.

As set forth in the Declaration of Charles H. Ellerbrock attached hereto as Exhibit A, Mr. Karyanis' assertion appears to be an after-the-fact creation for several reasons. First, Mr. Karyanis never raised this issue in correspondence and telephone conversations after Defendant received GM's Cease and Desist letter dated May 25, 2004. For example, in both a response letter sent by Mr. Karyanis to Mr. Ellerbrock's Cease and Desist Letter of May 25, 2004, and in two extended telephone conversations between Mr. Karyanis and Mr. Ellerbrock on June 16, 2004 and August 5, 2004, Mr. Karyanis made absolutely no mention of this alleged contact by GM's legal department in 1996. Ellerbrock Decl. at ¶ 3. If such a contact had in fact taken place, Mr. Karyanis would have immediately raised the alleged contact by GM's legal department in 1996, and discussed it with Mr. Ellerbrock.

Second, GM maintains an infringer file system and data base for infringers, and GM's infringer file system and computer data base have no entry or reference to "Cadillac City." Id. at ¶ 4.

Third, GM has no documents in its files or possession relating to Defendant other than some photos that were taken of Cadillac City on or about May 19, 2004, and the emails forwarding such photographs to GM's legal department. Id. at ¶ 5.

3

Fourth, it is, and has been for decades, the well-established practice and procedure of the GM legal department to request compliance with GM's trademark rights with Cease and Desist letters such as the May 25, 2004 letter that is attached as Exhibit F. Id. at ¶ 6. GM never requests compliance by simply calling an infringer and requesting compliance orally. Id.

Fifth, the GM legal department would have never told an independent car dealership using the name "Cadillac City" simply to remove the Cadillac Crest®, but that it was somehow not objectionable to continue to use the business name "Cadillac City" as alleged in Mr. Karyanis' Affidavit at Paragraph 8. Id. at ¶ 7. GM's legal department would have never authorized an independent car dealership to continue using the name "Cadillac City" under any circumstances. Id.

Finally, the first time that Mr. Karyanis made any assertion that such an alleged telephone call had taken place in 1996 was during the course of settlement discussions after GM had filed this lawsuit and moved for a preliminary injunction. Id. at ¶ 8. During such discussions, GM's counsel explained that the fact that Defendant had been using the business name for 30 years without objection by GM did not constitute laches and acquiescence unless Defendant could demonstrate that somebody at GM's legal department knew about the use of the business name and acquiesced in the continued use of the name "Cadillac City." Id. A few days after GM's counsel made this explanation, Mr. Karyanis asserted for the first time that such a telephone call took place. Id.

### B. Defendant's Alleged Lengthy Use of "Cadillac City" Does Not Constitute Laches Unless GM's Legal Department Knew About "Cadillac City."

The law of this Circuit is well established that the defense of laches requires knowledge on the part of GM. Laches "is an equitable doctrine which penalizes a litigant for negligent or

4

wilful failure to assert his rights, and is not appropriately applied here, where [the trademark holder] was unaware of the infringement and [the infringer has] no claim that the lack of knowledge was itself wilful or negligent." Valmor Products v. Standard Products Corp., 464 F.2d 200, 204 (1st Cir. 1972) (affirming district court's refusal to apply laches doctrine). In the Supreme Court's classic formulation: "There must, of course, have been knowledge on the part of the plaintiff of the existence of these rights, for there can be no laches in failing to assert rights of which a party is wholly ignorant and whose existence he has no reason to apprehend." Halstead v. Grinnan, 152 U.S. 412 (1894).

Nor will courts infer the requisite knowledge from the mere fact that an infringing business is in operation or has a listing in a telephone directory. E.g., National Trailways Bus System v. Trailway Van Lines, Inc., 269 F.Supp. 352, 359 (D.C.N.Y. 1965) (refusing to impute knowledge for purposes of applying laches based on defendant's publication of mark in telephone directory).

Moreover, any such knowledge must be knowledge of the legal department responsible for trademark enforcement. See, e.g., Plasticolor Molded Products v. Ford Motor, 698 F.Supp. 199, 203 (C.D.Cal. 1988) (denying defendant's laches argument because defendant presented no evidence that anyone in Ford's trademark enforcement department had knowledge of the defendant's infringement); Official Airline Guides v. Churchfield Publications, 756 F. Supp. 1393, 1404 (D. Or. 1990), affirmed, 6 F.3d 1385 (9th Cir. 1993) (knowledge on the part of company division not involved in trademark enforcement did not constitute knowledge to begin delay for purposes of laches defense);

C.  **Laches and Acquiescence Are Not Available To An Intentional Copier.**

Even if GM had such knowledge (which GM did not), the law of the First Circuit is well settled that one who intentionally copies trademarks may not invoke laches and acquiescence as

5

a defense.[1] DeCosta v. Columbia Broadcasting System, Inc., 520 F.2d 499, 514 (1st Cir. 1975) ("We do not find in the authorities sufficient support, where defendants' action was found by the jury to be deliberate and knowing, to invoke this doctrine."); cert. denied, 423 U.S. 1073 (1976); Baker v. Simmons Co., 307 F.2d 458, 469 n.4 (1st Cir. 1962) (holding defendants not in "any position to invoke the defense of laches" in light of "defendants' calculated design to trade upon plaintiff's reputation"); see also McCarthy § 31:9 ("That is, a finding of bad faith bars the laches defense absolutely and is not just a factor to be weighed with other factors."). In other words, "[l]aches is not a defense against [preliminary] injunctive relief when the defendant intended the infringement." E.g., Harlequin Enterprises v. Gulf & Western, 644 F.2d 946, 950 (2d Cir. 1981); TWM Mfg. Co., Inc. v. Dura Corp., 592 F.2d 346, 349 (6th Cir. 1979) (The district court should not sustain the defense of laches if it is resolved that the defendants copied plaintiff's invention.). As the Second Circuit observed, "[t]hus, the appellees' intentional infringement is a dispositive, threshold inquiry that bars future consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case." Hermes Intern. v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000). In short, "[l]aches will not bar injunctive relief where a defendant adopted the trade name with knowledge of a plaintiff's

---

[1] There can be no doubt that Defendant adopted the name "Cadillac City" intentionally and with knowledge of GM"s trademark rights. Indeed, as the photographs make clear, Defendant has intentionally and precisely copied the federally registered and stylized script of the trademark CADILLAC® in Defendant's signage. The law is well settled that such "use of another's style or script constitutes presumptive evidence of deliberate copying and an intent to confuse." Porsche Cars North America v. Manny's Porshop, 972 F.Supp. 1128, 1132 (N.D.Ill. 1997). Moreover, Defendant's conscious awareness of GM's trademark rights in CADILLAC® precludes Defendant from demonstrating the good faith necessary to assert either laches. Defendant must prove that its own conduct, in the words of Defendant's authority, has been in the "utmost good faith." Elvis Presley Enters., Inc. v. Elvisly Yours, Inc., 936 F.3d 889, 894 (6th Cir. 1991).

6

rights and objections." Ameritech, Inc. v. American Information Technologies Corp., 811 F.2d 960 (6th Cir. 1987).[2]

Allowing such a defense would lead to the absurd result of Defendant having a paid-up royalty-free license to use GM's intellectual property in perpetuity, something that even GM's licensed dealers do not enjoy.

**D.    Laches and Acquiescence Cannot Trump Consumer Confusion.**

The courts have made clear that where a defendant uses marks that are clearly confusing, the consuming public's "interests are paramount," and may undermine an otherwise viable laches or acquiescence defense. James Burrough, Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266 (7th Cir. 1976); see also McCarthy § 31:10 ("A court which denies injunctive relief on the ground of a laches defense may find itself in the uncomfortable position of putting a judicial stamp of approval on conduct which will confuse consumers."); SunAmerica Corp. v. Sun Life Assurance Co. of Can., 77 F.3d 1325 (11th Cir. 1996) ("Someone must suffer the remedy, and the law demands it not be the public."). In other words, where there is a strong showing of a likelihood of confusion, a preliminary injunction is appropriate even where the plaintiff has delayed filing suit. See Dial-A-Mattress Operating v. Mattress Madness, 841 F. Supp. 1339 (E.D. N.Y. 1994).

---

[2] Although the authorities cited by Defendant are from other jurisdictions and not controlling, they clearly articulate this principle. In Brittingham v. Jenkins, the court held that neither laches nor estoppel applies when a defendant acts with consciousness or knowledge of the plaintiff's trademark rights. "As to laches and acquiescence it has been repeatedly held, in cases where defendants acted fraudulently or with knowledge of plaintiff's rights, that relief by injunction would be accorded although an accounting of profits should be denied." Brittingham, 914 F.2d at 457 (quoting Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 419, 36 S.Ct. 357, 362, 60 L.Ed. 713 (1916)). Similarly, in Elvis Presley Enters., the court held that the defendant's continued infringement in spite of his knowledge of the plaintiff's rights precluded his assertion of an estoppel defense. "Despite his knowledge of EPE's rights, Shaw continued to sell 'Elvis' merchandise after receiving EPE's cease and desist letter and after having unsuccessfully sought a license. Shaw's conduct demonstrates an absence of the utmost good faith necessary to establish an equitable estoppel defense." Id. at 895 (affirming district court's grant of summary judgment and entry of permanent injunction in favor of plaintiff).

Moreover, "a strong showing of a likelihood of confusion can trump even a proven case of acquiescence." McCarthy § 31:42, at 31-89; see also Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc., 934 F.2d 1551 (11th Cir. 1991) ("Although petitioner has acquiesced in use of their logo by the registrant, the public interest in preventing confusion around the marketplace is paramount to any inequity caused the registrant.").

These principles govern here. The Cadillac® trademarks, particularly CADILLAC® in GM's federally registered and stylized script, are among the most famous marks in the world with an unmistakable connection to GM. Under the circumstances, it can hardly be in the consuming public's interest for the Court to permit Defendant to continue to use the GM Trademarks for an independent car dealership. "Indeed, such a [result] is tantamount to holding that both parties are free to offer their products for sale in the same marketplace," a result that ignores the fact that "a trademark ... is ... a source of identification, not one of confusion." Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F. Supp. 866 (E.D. N.Y. 1978).

E. **Laches and Acquiescence Cannot Bar GM's Claim for Injunctive Relief.**

Courts consistently have stated that mere delay cannot preclude a plaintiff's claim for an injunction, even if it may foreclose a claim for damages. See Kellogg Co. v. Exxon Corp., 209 F.3d 562 (6th Cir. 2000). In a very similar case, Ford Motor Company v. Lloyd Design Corp., 184 F.Supp.2d 665, 683 (E.D.Mich. 2002), the court rejected Lloyd's laches and acquiescence defense because Lloyd's "laches claim cannot bar [Ford's] request for injunctive relief." (citing Kellogg Co. v. Exxon, 209 F.3d at 568). This principle has particular force where the defendant has "acted ... with knowledge of plaintiff's rights." Hanover Star Milling Co. v. Metcalf, 240 U.S. 403 (1916).

Indeed, in one case, the trademark holder waited for over 40 years before bringing suit. In that case, the court rejected the laches and acquiescence defenses and entered an injunction. University of Pittsburgh v. Champion Products, Inc., 686 F.2d 1040 (3d Cir. 1982). In University of Pittsburgh, the defendant was in the business of imprinting wearing apparel with the marks of numerous schools and colleges. When one college sued for infringement of its marks, the defendant sought to justify its infringement under a laches defense. Although the plaintiff college had delayed **nearly forty years** in bringing suit, the Third Circuit rejected the laches defense, and the Court held that the laches defense failed as a matter of law. Id. at 1049.

The reason that laches and acquiescence do not bar injunctive relief is because the Defendant can continue to conduct its business – i.e., Defendant can still sell used cars without misappropriating the GM Trademarks. Indeed, there is no question that Defendant could continue its business simply using a business name such as "Cambridge Used Cars." As another court observed in the Manny's Porshop case, "it is difficult to discern how defendants will be injured by changing their name to 'Manny's' or 'Manny's Repair Shop.'" 972 F.Supp. at 1132.

### F.  GM's Alleged Acquiescence Is Terminable By GM.

Defendant strenuously argues that GM acquiesced in Defendant's use of the name "Cadillac City" in 1996. The case law, however, makes clear that if GM indeed acquiesced in 1996 (which GM did not), GM would have the right to revoke that acquiescence at any time. "Acquiescence alone is akin to an implied license to use the name," and as such it is "generally terminable at the will of the licensor." Conagra v. Singleton, 743 F.2d 1508, 1516 (11th Cir. 1984). Thus, to the extent that Defendant asserts that GM consented to Defendant's use of "Cadillac City," GM hereby revokes such consent.

9

## II.  DEFENDANT'S RELIANCE ON <u>CADILLAC MARINE</u> IS MISPLACED.

Defendant's reliance on <u>Cadillic Marine</u> is misplaced for several reasons. First, the court made clear that if Cadillac Marine had been selling automobiles, the court would have enjoined Cadillac Marine from using the trademark CADILLAC®. For example, the court noted that the "word 'Cadillac' has come to identify plaintiff and no one else, to the purchasing public as a source or origin of automobiles, automobile engines, parts, accessories and related goods and services thereto." 226 F.Supp. at 719. The court further noted that GM "has acquired a right to secondary meaning in the trade-mark 'Cadillac' in the automotive field." 226 F.Supp. at 725.

Second, the court also placed reliance on the fact that "defendant began manufacturing runabout type aluminum boats in Cadillac, Michigan," and that

> [c]onsistent with the long practice of naming products and industries after the city in which an industry is located and the tradition of geographical trade names, the defendant's officers, in good faith, decided to name the corporation and the boat after the City of Cadillac and Lake Cadillac.

226 F.Supp. at 720.

Finally, <u>Cadillac Marine</u> is old and bad law in light of the enactment of the Federal Anti-Dilution Act in 1996 that was enacted to protect famous trademarks such as CADILLAC®. In passing the Act, Congress gave some examples of trademarks that would be protected. <u>House Report 104-374</u> (Nov. 30, 1995) (giving as examples of dilution of three of the most widely used and extensively recognized marks in the United States: DUPONT on shoes, BUICK on aspirin and KODAK on pianos). The same three examples appear in the House and Senate remarks on the bill. In <u>Senate: Senator Hatch at Cong. Rec. 19310 (Dec. 29, 1995), reprinted at 51 P.T.C.J. 345 (Jan. 4, 1996)</u>; In <u>House: Representative Moorhead at Cong. Rec. H14317 (Dec. 12, 1995), reprinted at 51 P.T.C.J. 209 (Dec. 21, 1995)</u>. Thus, courts have observed that "the use of DuPont shoes, Buick aspirin, and Kodak pianos would be actionable" under the law of trademark

dilution. Washington Speakers Bureau v. Leading Authorities, 33 F.Supp.2d 488 at fn 32. (E.D. Va. 1999).

There can also be no dispute that the trademark CADILLAC® is the prototypical famous trademark that is entitled to protection under the Federal Anti-Dilution Act. See e.g., Michael Caruso & Co., Inc., v. Estefan Enterprises, Inc., 994 F. Supp. 1454, 1463 (S.D. Fla. 1998) (concluding that Congress intended to protect from dilution marks that "rise to the level of 'Buick' or 'Kodak.'"), aff'd 166 F.3d 353 (11th Cir. 1998). Indeed, in his section on Dilution "Only Strong Marks Need Apply," Professor McCarthy astutely observed that trademarks "such as CADILLAC, COCA-COLA, KODAK, MCDONALD'S, SONY, and TOYOTA" "were truly famous to a substantial portion of the whole population." McCarthy § 24:112.

In short, the Cadillac Marine case may well have turned out differently under the Federal Anti-Dilution Act.[3]

### III. THE FACT THAT OTHERS MAY INFRINGE THE TRADEMARK CADILLAC® IS NOT A VALID DEFENSE.

Defendant makes much of the fact that others may be infringing the trademark Cadillac®. The law however is well settled that "[t]he existence of other infringers is irrelevant [because] a defendant cannot rely upon the wrongdoing of others to exculpate itself from its own infringing activities." Council of Better Business Bureaus, Inc. v. Better Business Bureau, Inc., 200 U.S.P.Q. 282 (S.D. Fla. 1978). As Professor McCarthy has observed: "Such an argument is no

---

[3]Defendant's argument that GM must provide "objective proof of actual injury to the economic value of an alleged famous mark," [Cadillac Memo at 10] ignores the language of the very case Defendant cites. The Supreme Court noted in Victor Moseley, "[i]t may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can be reliably proven through circumstantial evidence – the obvious case is one where the junior and senior marks are identical." 534 U.S. at 434. See also General Motors v. Autovation Technologies, 317 F.Supp.2d 756, 764 (E.D.Mich. 2004) ("GM has presented reliable, circumstantial proof of actual dilution. GM's evidence establishes actual dilution in that Defendant has used marks that are identical to the world-famous GM Trademarks.").

more persuasive than that of the drunken driver who pleads to be let off because there are 'lots of other drunk drivers on the road—why pick on me?' This is not a 'defense,' nor should it be." McCarthy § 17:17.

## IV. THERE IS NO *DE MINIMIS* EXCEPTION TO THE LANHAM ACT.

Defendant seeks to invoke David vs. Goliath underdog status by arguing that because Defendant is a small, local business and is going up against a company the size of General Motors, Defendant's infringement should be excused. However, there is no "de minimis" exception to the Lanham Act, and the Lanham Act applies to even small, local businesses that violate large corporations' trademarks. As Judge Posner brilliantly articulated:

> Small local businessmen of good repute do not have a license to steal trademarks from large nonresident corporations, and the amount of harm that the infringer inflicts goes to the amount of damages rather than to his liability for damages; the trademark laws do not excuse modest infringements by petty pirates.

General Electric Co. v. Speicher, 877 F.2d 531, 537 (7th Cir. 1989) (emphasis added); see also McCarthy § 24:94 ("even a small infringer will not be permitted to 'nibble away' at the plaintiff's reputation and goodwill").

As another court held in a very similar case where a small independent automobile repair shop was operating "out of a tin shack located in an industrial park in South Holland, Illinois" and using the name "Manny's Porshop," the Federal Anti-Dilution Act "prohibits even innocuous use." Porsche Cars North America, Inc. v. Manny's Porshop, Inc., 972 F.Supp. 1128, 1129 and 1132 (N.D.Ill. 1997).[4]

---

[4] Defendant's argument that GM has not provided a survey or gone through the eight factors must be rejected. First, there is no need for a survey "where the junior and senior marks are identical." Victor Moseley, 534 U.S. at 434. Second, such a survey is not necessary for a preliminary injunction. E.g., Le Sportsac, Inc. v. K Mart Corp., 754 F.2d 71 (2d Cir. 1985) (there is no flat rule that a survey must be introduced to obtain preliminary injunction); Susan's, Inc. v. Thomas, 26 U.S.P.Q.2d 1804, 1993 WL 93333 (D. Kan. 1993) ("There is no authority, however, to support the argument that a scientific survey is required at any time during this litigation and certainly none is required for the issuance of a preliminary injunction."); Finally, there is no need to go through the eight factors when the marks at issue are identical. E.g., General Motors v. Autovation Technologies, 317 F.Supp.2d 756, 761 (E.D.Mich. 2004) ("However, such multi-

Dated: 27 October 2004

*[signature]*

BANNER & WITCOFF
Peter D. McDermott
Thomas P. McNulty
28 State Street
28th Floor
Boston, MA 02109
Telephone: (617) 720-9600

HOWARD, PHILLIPS & ANDERSEN
Gregory D. Phillips
560 E. 200 South, Suite 300
Salt Lake City, Utah 84102
Telephone: (801) 366-7471

**Of Counsel:**

CHARLES H. ELLERBROCK
**GENERAL MOTORS CORPORATION**
300 Renaissance Center
Detroit, Michigan 48265-3000
(313) 665-4709

---

factored balancing is unnecessary where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods."). But, even if the Court were to go through the factors, GM would easily meet those factors. First, CADILLAC® is a strong mark. Second, the services are related. Third, the marks at issue are identical. Fourth, evidence of actual confusion will unlikely be uncovered during discovery. Fifth, market channels are similar. Sixth, consumer care may be higher, but Defendant's use undoubtedly qualifies as initial interest confusion. Seventh, Defendant's intent is evidenced by the precise copying of the trademark CADILLAC®. Eighth, the parties sell products in the same product lines.

13

## CERTIFICATE OF SERVICE

I, Peter D. McDermott., counsel for the Plaintiff, General Motors Corporation, hereby certify that service of a true copy of the foregoing **GM's Reply Memorandum In Support Of Motion For Preliminary Injunction** has this day been made upon the Defendant, Cadillac City, Inc., by delivering copies thereof to its counsel of record, by facsimile and Federal Express, as follows:

Edward F. George, Jr., Esq.
EDWARD GEORGE & ASSOCIATES
110 Florence Street, 2nd Floor
Malden, MA 02148
Tel: 781-322-7575
Fax: 781-322-1555

Date: _____   _____