UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERAL MOTORS CORPORATION,<br>A Delaware corporation,<br><br>*Plaintiff,*<br><br>vs.<br><br>CADILLAC CITY, INC.,<br>A Massachusetts corporation,<br><br>*Defendant.* | CIVIL ACTION NO. 04 cv 11926 REK |

## CADILLAC CITY, INC.'S REPLY MEMORANDUM IN RESPONSE TO GM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

### I.   GM'S IS BARRED FROM RECOVERY, INCLUDING INJUNCTIVE RELIEF, BY ESTOPPEL

A Plaintiff will be barred from injunctive relief where a showing of equitable estoppel is made. *Wafer Shave v. Gillette Co.*, 857 F. Supp. 112, 119 1993 (D. Mass. 1993). To demonstrate estoppel in the context of an infringement claim a defendant must establish the following elements; (1) that the owner of the mark, through misleading conduct, leads the alleged infringer to reasonably infer that the owner does not intend to enforce its rights against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there is a duty to speak (2) The alleged infringer relies on that conduct.(3) Due to its reliance, the alleged infringer will be materially prejudiced if the owner of the mark is allowed to proceed with its claim. **Id.**.

Massachusetts courts hold that the first element, misleading conduct, exists where a threat of litigation is made, but the owner of the mark does not reassert the infringement claim for several years. **Id. at 120.** The facts of *Wafer Shave* involved only a four (4) year lapse in time. In contrast, in the instant case eight (8) years passed from the date of the original phone call in 1996, in which GM called Mr. Karyanis complaining of his use of the name "Cadillac Ciy" and the "crest", to the date when the claim was finally brought by GM in 2004. **Affidavit of Charles Karyanis In Opposition to GM's Motion for Preliminary Injunction, para's. 8 and 9.** The *Wafer Shave* court held that any reasons for the delay in filing suit were irrelevant, since those reasons were not communicated to Gillette or otherwise known by it. **Id. at 122** (*Citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, **960 F.2d 1020 at 1044 (Fed. Cir. 1992)**. In our case, the delay was twice as long as was found sufficiently misleading in *Wafer Shave.* GM made contact with Defendant in 1996, eight (8) years passed without any further communication or explanation from GM, and in 2004 GM filed their claim. These facts are clearly sufficient under *Wafer Shave* to constitute misleading conduct.

As for the second element, the *Wafer Shave* Court found defendant to be actually misled when, after responding that they would not stop the use complained of, the defendant continued business as usual for four years under the assumption that the claim had been abandoned. **Id. at 123.** The facts of the case at bar are again directly comparable. In 1996, when GM demanded that Cadillac City, Inc. cease use of their trademark, Cadillac City, Inc. responded that they had been incorporated since the 1970s and that they would sell the name but not give it up. **Affidavit of Charles Karyanis, para. 8.** Cadillac City, Inc. did, however comply with GM's request that they remove the Cadillac "crest" from their signs, leaving the signs to simply say "Cadillac City". **Supplemental Affidavit of Charles Karyanis, para. 2.**

The third element of the equitable estoppel defense, reasonable reliance on the part of the alleged infringer, was satisfied in *Wafer Shave* after three (3) years had elapsed since the original conversation between the parties. The court reasoned that after the plaintiff had threatened litigation, the only possible inference to be drawn from three (3) years of silence was that the claim had been abandoned. **Id. at 124** (Citing *Aukerman*, **960 F.2d at 1044** noting that "the longer the delay, the stronger the inference [that the plaintiff has abandoned its claim] becomes."). **Id.** In the instant case, the inference is significantly stronger after eight (8) years of inaction than after three (3).

Finally, *Wafer Shave* held that to establish the final element, prejudicial/detrimental reliance, the court will "look for a change in the economic position of the alleged infringer during the period of the delay." **Id. at 125** (Citing *Aukerman, 960 F.2d at 1033*). A change in position will be more easily found where the alleged infringer makes substantial investment in allegedly infringing products during the delay. **Id.** In the instant case Defendant has made significant investments in Cadillac City, Inc. since GM's original phone call in 1996. Defendant has made investments in the form of dealer licenses, dealer registrations and plates, yellow page and other advertising in the name of Cadillac City, lines of credit, stationary, phone messaging, the cadillaccity.com domain name and customer goodwill, especially among other dealers with whom the Defendant does 90% of its business on a wholesale basis. (**Affidavit of Charles Karyanis, para's. 10, 11, 12 and 13**). See also *A.C. Aukerman Co. v. Miller Formless Co., Inc.,* **693 F.2d 697, 701 (7th Cir. 1982)** (loss of witnesses' memory and lost documentation constitute prejudice). Altogether, the facts of the instant case would clearly establish elements of estoppel under *Wafer Shave*, a very recent Massachusetts case applying the equitable estoppel defense to an infringement claim.

Even absent a finding of an actual representation by GM in 1996, mere silence or inaction on the part of the owner of the mark will still bar injunctive relief where the delay and acquiescence has continued for so long, and under such circumstances, as to create a new right in the defendant. ***George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505, 507.** The *Meyer* Court went on to say that a mark owner's silence or inaction would still warrant estoppel in cases "where the use, by others, for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand." **Id.** This standard is widely recognized in Massachusetts and has remained good law. See ***Stewart v. Finkelstone*, 206 Mass. 28, 36 1910 Mass. LEXIS 747 (Mass., May 18, 1910)** and ***Menendez v. Holt*, 128 U.S. 514, 529 1888 U.S. LEXIS 2246**. In the instant case, the silence and inaction on the part of the Plaintiff stretched for at least thirty (30), probably forty (40) years. Under the language of ***George J. Meyer Mfg. Co***, this delay constitutes "a long period of time" under which Defendant reasonably assumed that his use was permissible. Further, it is obvious that Defendant's use for this period of time has enhanced the reputation of the business.

## II.   GM IS BARRED FROM RECOVERY BY THE DOCTRINE OF LACHES

### A. GM is Barred from Recovery by the Doctrine of Laches Because it Had Actual Notice of The Infringing Use in 1996.

To determine the length of time constituting unreasonable delay, courts look to the state-law statute of limitations for injury to personal property. ***Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991).** In *Elvisly Yours*, the relevant statute of limitations was three (3) years, as it is in Massachusetts (See **M.G.L 260 § 4**). The court in *Elvisly Yours* held, "In other words, a delay beyond the three-year statutory period is presumptively prejudicial and unreasonable. The period of delay begins to run when plaintiff had

4

actual or constructive knowledge of the alleged infringing activity." **Id.** (**Citing Dana Corp. v. IPC Ltd. Partnership, 674 F. Supp. 581, 583 (E.D. Mich. 1987).**) This position is also adopted by the First (1st) Circuit, See ***SL Serv. v. Int'l Food Packers, Inc.*, 217 F. Supp. 2d 180, 184 (2002)** (If plaintiff filed the complaint after the **statute of limitations** expired, courts presume that laches is applicable, and plaintiff has the burden of demonstrating that there is no unreasonable delay and that defendant is not prejudiced.) Mr. Karyanis has several times stated under oath in his two Affidavits filed herein that he received a phone call from a member of GM's legal department in 1996, and that this individual wanted him to relinquish the name "Cadillac City" and remove the Cadillac "crest" from his signage. He further stated under oath that he refused at that time in 1996 to relinquish the name but did remove the "crest." **Affidavit of Charles Karyanis, para. 8** and **Supplemental Affidavit of Charles Karyanis, para. 2**. The issuance of this phone call in 1996 has been denied by GM and thus is a clearly disputed issue of fact. If true, it proves that GM had actual notice of the Defendant's alleged infringing activity at the time, and that the phone call began the tolling of the three (3) year period for purposes of the doctrine of laches.

Plaintiff contends that Defendant's failure to mention this 1996 conversation during their brief communication in 2004 indicates that it never took place. **GM's Reply Memorandum in Support of Motion for Preliminary Injunction, pg. 3**. No such inference can be fairly drawn from the correspondence between the parties in 2004, because Defendant Cadillac City, Inc.'s portion of such "correspondence" consisted of one letter, two sentences long, requesting clarification of what the infringement consisted of this time (see Exhibit 1 attached to the **Declaration of Charles H. Ellerbrock**), and an equally brief follow-up phone conversation. **Supplemental Affidavit of Charles Karyanis, para. 3**. Moreover, GM relies heavily on Mr.

5

Ellerbrock's Declaration in which he claims to have had "two extended conversations" with Mr. Karyanis in 2004. **Declaration of Charles H. Ellerbrock, para. 3.** But Mr. Karyanis' Supplemental Affidavit filed in response tells an entirely different story of what actually occurred, as he states;

> "When I received the letter dated May 25, 2004 from Mr. Ellerbrock, I said to myself, 'We have already gone through this in the 1990's-they wanted me to take the Crest off the sign and I did.' So when Mr. Ellerbrock called me after I received that letter I asked him, 'How am I in violation?' That is also why I wrote my letter to him dated June 8, 2004, asking Mr. Ellerbrock to 'provide us with specific examples of our usage of the CADILLAC brand.'" **Supplemental Affidavit of Charles Karyanis, para. 3**.

As it was Mr. Karyanis' understanding that the issue had been resolved in 1996 upon removal of the crest, his natural response to GM was to ask how he had infringed on the mark at this point in 2004. His failure to single-handedly identify and raise all affirmative defenses when confronted again by GM eight (8) years later only confirms that Mr. Karyanis is a used automobile dealer, not a seasoned attorney practiced in the area of trademark infringement.

In **GM's Reply Memorandum, page 3** GM points to the absence of Defendant's name in their infringer database, as well as the absence of any documents in its files or possession regarding the Defendant before May 2004, in an attempt to disprove the existence of the 1996 phone call. The absence of these records can be just as easily taken as evidence of GM's inaction and acquiescence to Cadillac City's continued use of the name "Cadillac City" after the phone conversation of 1996. No one (including Mr. Karyanis) has claimed that GM ever received correspondence from Cadillac City, Inc. of which GM could have retained a copy prior to 2004. Subsequent to the 1996 conversation, Cadillac City, Inc. never heard from GM again. **(Affidavit of Charles Karyanis, para's 8 and 9)**. It is therefore not surprising that GM never started a file on Cadillac City, Inc.

6

Mr. Ellerbrock's statements that GM would "never" contact an alleged infringer by phone or authorize Cadillac City, Inc.'s use of the mark is no more than a repetition of GM's position masquerading as unsubstantiated evidence. **GM's Reply Memorandum, Page 4.** Nowhere in Mr. Ellerbrock's Declaration attached to GM Reply Memorandum does he lay down any evidentiary basis for these claims: although he states that he is GM's "Intellecual Property Counsel", he does not allege that he was so in 1996, he does not allege that he has spoken to the person who was and does not claim to have interrogated those other persons who worked in GM's legal department in 1996. **Declaration of Charles H Ellerbrock, para. 6 and 7.** The alleged incident was eight (8) years ago, and it is doubtful even today that GM's legal counsel is required to obtain permission for and to record each phone call made in the course of business. In addition, whether or not GM would normally "authorize" Cadillac City Inc.'s use of the word Cadillac as a matter of policy is simply not the question. Cadillac City, Inc. does not allege that GM authorized the use, but rather that it failed to act upon its alleged rights for an unreasonable time period. Whether or not GM would issue an intentional grant of authority under the same circumstances is irrelevant.

Finally, it is difficult to imagine that, absent the alleged communication from GM in 1996, Mr. Karyanis would suddenly cease the use of a crest which had appeared on his business signage for over thirty (30) years. **Affidavit of Charles Karyanis, para. 8.** If GM did not contact Cadillac City as they allege they did not, why would Mr. Karyanis have altered the signage? Mr. Karyanis states in sworn affidavits that he did in fact alter his signage in 1996. **Id.** Conversely, GM makes no counter-statement on the subject anywhere in the pleadings, including **GM's Reply Memorandum**, written in response to the first Affidavit. The Court will find that

7

this question of fact, among others, can be easily proven by corroborative evidence offered by Defendant at hearing or trial, and cannot be merely explained away by GM.

### B. Alternatively, GM is Barred from Recovery by the Doctrine of Laches Because it Had Constructive Notice of Cadillac City, Inc.'s Infringing Use of the Mark.

In the absence of a finding that GM had actual knowledge of Cadillac City's use of the "Cadillac" mark, GM was at least on constructive notice of such use, and their delay was therefore still prejudicial and unreasonable. As aforementioned, a delay longer than three (3) years after the plaintiff has knowledge (actual or constructive) of the alleged infringing activity is presumptively prejudicial and unreasonable. **_Elvis Presley Enter., Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894._**

Although it is more than likely that GM had actual knowledge of Cadillac City, Inc.'s use of the "Cadillac" mark in 1996, if the Court should find that they did not, such gross negligence warrants a finding of imputed knowledge or constructive notice. In finding constructive notice of a claim for infringement, the law imputes notice where "a man of ordinary intelligence" would have known of the infringing use. **_Bridgestone/Firestone Research v. Auto. Club, 245 F.3d 1359, 1362 (Fed.Cir. 2001)_** (Citing **_Jonhston v. Standard Mining Co., 148 U.S. 360, 370 (1893)._** Over the course of the last twenty years, Cadillac City, Inc. has consistently done business with countless authorized Cadillac dealers in Massachusetts, Rhode Island, New Hampshire, Connecticut, and New York. In Massachusetts alone, Cadillac City, Inc. has dealt regularly with at least six (6) authorized Cadillac dealers. **Supplemental Affidavit of Charles Karyanis at para. 4.** Further, during at least the last thirty (30) years of Cadillac City, Inc.'s operation, the road on which it is located, Msgr. O'Brien Hwy., has been a main highway leading to the downtown Boston area. In fact, for a long period of time this road was the most logical

route from Boston Cadillac (Boston) to Patkin Cadillac (Medford), both of which the GM Cadillac representative visited frequently, causing him to drive directly past Cadillac City, Inc. each and every time. **Id. at para. 5**. It is hard to imagine a more clear case for constructive notice. The ***Bridgestone*** court found constructive notice where there was widespread commercial use, the passing of 27 years, and the absence of a reasonable excuse by the Automobile Club, and charged the plaintiff with undue delay in seeking to enforce its legal rights. **Id.** In ***Kellog Company v. Exxon Corporation,* 209 F.3d 562** the Court held the plaintiff to a higher standard of inquiry than that of a "man of ordinary intelligence." They held that, since the plaintiff was responsible for monitoring Exxon's product development, the delay for purposes of the laches defense began to run at the point when Exxon had emerged and established itself in the non-petroleum product line. **Id. at 574.** In essence, the Court considered the unique position that the Corporation was in to monitor the alleged infringer's activity, and began the delay period as soon as the plaintiff should have known of the alleged infringement. **Id.** GM is in a similar position regarding its ability to monitor potential infringement, warranting a higher standard of inquiry, and a similar result.

Furthermore, anyone regularly traveling in the Boston/Cambridge area for the past ten (10), twenty (20), and certainly thirty (30) or forty (40) years would have inevitably noticed Cadillac City, Inc.'s business. Cadillac City, Inc.'s signage is clearly visible, if not blatantly so, from the O'Brien Highway. It is so clear, that it would be practically impossible not to see it while driving past. As the photos on Page 2 of **GM's Memorandum in Support of Motion for Preliminary Injunction** reveal, at least one of the signs shown is approximately four (4) feet wide by ten (10) feet long, and stands approximately 12 feet in the air. It is bright royal blue in color, with large, bold, white letters that read "Cadillac City." It would be very difficult, if not

9

impossible, for GM to overlook a business operating openly and notoriously with the word "Cadillac" printed on a large, visible sign for a period of thirty (30) years. **GM's Memorandum, page 2.** Irrespective of GM's capacity for monitoring the use of the trademark, as "men [or women] of ordinary intelligence," they should have been aware of the Defendant's alleged infringement. GM's many authorized dealers, representatives, legal employees and agents would have had to do nothing more than to go about their daily routines to be placed on notice of Cadillac City, Inc.'s existence and the nature of its business. It is clear that GM has not met the prevailing duty of inquiry placed upon a man of ordinary intelligence set forth in ***Bridgestone /Firestone Research v. Auto. Club*, 245 F.3d 1359, 1362 (Fed.Cir. 2001)** (Citing ***Jonhston v. Standard Mining Co., 148 U.S. 360, 370 (1893)*** ). A thirty (30) or forty (40) year lapse of attention and failure to exercise ordinary diligence is certainly an unreasonable delay, and is exactly the type of delayed legal action that the doctrine of laches seeks to prevent.

### III.  PLAINTIFF'S CRITICISM OF *Cadillac Marine* IN LIGHT OF THE FEDERAL ANTI-DILUTION ACT IS MISGUIDED.

Plaintiff's claim that ***Cadillac Marine*** would have reached a different result if the action had been brought after 1996, when the Federal Anti-Dilution Act was enacted, is a misinterpretation of the Act. ***Cadillac Marine*** involved a federal claim for infringement, not dilution. To claim that ***Cadillac Marine*** would have come down differently as an action for dilution than it did as an action for infringement is to compare apples to oranges. The claims are drastically different in purpose as well as application, but both eventually require some evidence of actual confusion or dilution. An action for infringement upon a trademark is rooted in consumer protection law, and functions to protect the public from being mislead about the origin or authenticity of a particular product. For this reason, infringement actions only require proof of

10

a likelihood of confusion, because the harm depends upon the susceptibility of consumers to confusion under the circumstances. ***General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F. Supp. 716** See also ***Exxon Corp. v. Exxene Corp*, 696 F.2d 544, 549.** Such proof usually consists of evidence of actual confusion among a substantial number of customers, warranting a presumption of a likelihood of future confusion. **Id.**

On the other hand, an action for dilution of a mark is appropriate where the harm is suffered by the owner of the mark rather than the consumer. For this reason, a claim of dilution requires that the Plaintiff establish much more than a likelihood of confusion, he *must* provide evidence of actual dilution. ***Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003).** While evidence of actual confusion is acceptable to evidence a likelihood confusion, evidence of actual dilution is required under the Federal Trade Dilution Act. **Id.** Although the Act does offer protection to more powerful marks such as DUPONT, KODAK, and BUICK, the Plaintiff's belief that merely being a part of this class of marks gives rise to an action under the Act is completely incorrect. **Id. at 432, 433.** Plaintiff fails to recognize that if GM was unable to establish a likelihood of confusion in *Cadillac Marine*, they would certainly not have been able to establish actual dilution, as is required under the Act. Therefore, while Plaintiff asserts that a kinder result would have befallen the "Cadillac" mark under the Anti-Dilution Act, in reality the result would have likely been more harsh, and the standard more stringent. Finally, Plaintiff's statement that *Cadillac Marine* is "old and bad law" is just plain false. **GM's Reply Memorandum, Page 10.** The only scintilla of negative case history is that it has been factually distinguished. The case has not even been questioned since its 1964 decision. ***General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F. Supp. 716 (case history).** Finally, *Cadillac Marine* was cited in **Cadillac City, Inc.'s Memorandum In Opposition** not only to provide the

11

Court with a history of the word "cadillac," but also for the propositions (as advanced by that Court) that since "cadillac" is widely used by others and is both an historical and geographical term, it is entitled to a very narrow protection.

Further, in response to the requirement that Plaintiff prove actual dilution, Plaintiff alleges that it can demonstrate actual dilution through circumstantial evidence. **GM's Reply Memorandum, page 11**. Plaintiff ignores the fact that a condition precedent to allowing circumstantial evidence when showing actual dilution is that the marks be identical. *Moseley v. V Secret Catalogue, supra* at 434. The *Moseley* Court cites "Kodak" shoes as an example, demonstrating the prevailing rule that the marks must be literally identical, or sound identical. **Id.** The court found that "Victor's Little Secret" was not identical to "Victoria's Secret," even though former admittedly brought the latter mark to the minds of consumers when read or spoken. **Id.** In *Exxon Corp. v. Exxene Corp, 696 F.2d 544, 550*, the Court held that a jury could find that "Exxene" and "Exxon" neither sounded the same nor looked the same, while "Polaroid" and "Polaraid" were close enough to being identical that circumstantial evidence could be used. **Id.** In the instant case, "Cadillac City, Inc." is not identical to "Cadillac" standing alone. Similar to the marks in *Victor Moseley*, an additional word appears in the "Cadillac City" mark that distinguishes it from the "Cadillac" mark. While the marks may be similar, they do not rise to the level of being visually and phonetically identical, as do "Polaraid" and "Polaroid." As the marks are not identical, Plaintiff must face the trying task of proving actual dilution by direct evidence.

### IV.  THE MORE RECENT DECISIONS UNDER THE FEDERAL ANTI-DILUTION ACT MAKE IT CLEAR THAT GM'S CLAIM IS SUSPECT.

In making the arguments that GM "is highly likely to succeed on its dilution claim," GM avoids reference to the series of recent decisions of the Second (2d), Seventh (7th) and Ninth (9th) Circuits involving the Federal Trademark Dilution Act of 1995 (1996), that limit protection

under the act to a select group of marks that have attained a very high level of fame. Specifically, in *Avery Dennison Corporation v. Jerry Sumpton* **No. 98-55810 (9th Cir. 1999)**, the Court stated as follows:

> "Dilution is a cause of action invented and reserved for a select class of marks – those marks with such powerful consumer associations that even non-competing uses can impinge on their value." See generally **Frank L. Schechter, The Rational Basis for Trademark Protection, 40 Harv. L. Rev. 813 (1927)** (proposing a cause of action for dilution); (other citation omitted.) Dilution causes of action, much more so than infringement and unfair competition laws, tread very close to granting "rights in gross" in a trademark. **See 3 McCarthy, supra, S 24:108.** In the infringement and unfair competition scenario, where the less famous a trademark, the less the chance that consumers will be confused as to origin (See *AMF Inc. v. Sleekcraft Boats*, **559 F.2d 341, 349 (9th Cir. 1979)**), a carefully crafted balance exists between protecting a trademark and permitting non-infringing uses." See 15 U.S.C. S. 1127. *Avery Dennison Corporation v. Jerry Sumpton, supra.* **at 875.**

Moreover, the application of the federal anti-dilution statute is not nearly as cut and dry as Plaintiff contends, as courts err on the side of caution in its application. As the 9th Circuit has stated in *Thane International Inc. v. Trek Bicycle Corporation* **305 F.3d 894 (2002)**:

> "The Federal Trademark Dilution Act of 1995, **Pub. L. No. 104-98, 109 Stat. 985 (1996)**, is relatively new, and presents formidable problems of interpretation. See generally *Nabisco, Inc. v. PF Brands*, **191 F.3d 208 (2nd Cir. 1999)**. Further, the implications of a broad application of the federal antidilution statute are troubling, as 'dilution causes of action, much more so than infringement and unfair competition laws, tread very close to granting rights in gross in a trademark (citing *Avery Dennison*), thereby hampering competition and the marketing of new products."

and

> "We therefore agree with the Second Circuit that, in considering this new statutory right, 'courts ...do better to feel their way from case to case,' *Nabisco, 191 F.3d at 227*, rather than ruling in sweeping brush strokes. It is with these cautions in mind that we proceed..."

The Court in *Thane International* goes on to point out that for a dilution claim to succeed, the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark, which is very arguably not the case here with reference to "Cadillac" and

"Cadillac City" in the context of the factual affidavits filed. See also **Meridian Mutual Insurance Co. v. Meridian Insurance Group 128 F.3d 1111 (7th Cir. 1997).**

## V. IN CONCLUSION, PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED.

Defendant has failed to establish the elements necessary to issue a Motion for Preliminary Injunction. Massachusetts courts require a plaintiff to establish the following in the context of a trademark infringement action: (1) that it is likely to succeed on the merits at trial; (2) that it will suffer irreparable harm if the preliminary injunction is not granted; (3) that the balance of hardships favors plaintiff; and (4) that a preliminary injunction is in the public interest. **Public Serv. Co. v. Nexus Energy Software, Inc., 36 F. Supp. 2d 436, 437.** The gravamen of this motion is whether plaintiff shows a likelihood of success on the merits. **Id.** To do so, the Plaintiff must establish that the trademark is (1) valid, and (2) being infringed upon (or diluted) by the Defendant. **Id.** As was established in **Cadillac City, Inc.'s Memorandum in Opposition to GM's Motion for Preliminary Injunction**, the Affidavits of Charles Karyanis, and the arguments presented herein, Plaintiff has failed to establish a likelihood of success on the merits of its claims.

As aforementioned, Defendant does not contest that Plaintiff has a valid trademark, but asserts that it has failed to prove the alleged infringement. As established in **Cadillac City, Inc.'s Memorandum in Opposition**, the "Cadillac" mark is confined by precedent to a very narrow scope of protection. **Cadillac Marine & Boat** held that the "Cadillac" mark is not entitled to exclusive use. As a result, the Court held that its mark is protected only against "the use of a similar mark to palm off his products as those of the owner of the trademark." **General Motors Corp. v. Cadillac Marine & Boat Co., 226 F. Supp. 716, 725-726.** The facts of the instant case

14

do not approach this standard. It is very obvious that the Defendant is not attempting to "palm off" immediately identifiable "Lexus, BMW, Audi, Volkswagen and other premium brands" as Cadillac products. **Affidavit of Charles Karyanis, para. 12.** To do so would be foolish, as no consumer is unable to distinguish a BMW from a Cadillac. It is for these same logical reasons that Plaintiff has not been able to establish a likelihood of confusion, also required to prove infringement. ***Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816**. However, even if the Court did honor the Plaintiff's claim, it would be barred by estoppel and/or laches, as established herein.

Further, the Plaintiff has not demonstrated actual dilution, which is necessary to succeed under the Anti-Dilution Act. ***Moseley v. V Secret Catalogue*, 537 U.S. 418 (2003).** The law requires proof of actual dilution by direct evidence where the marks are not identical to the eye and ear. **Id.** Cadillac City, Inc. is clearly not identical to the "Cadillac" mark, it sounds different and has nearly twice as many syllables. As there is a complete absence of any evidence demonstrating actual dilution, it is not necessary to weigh such evidence against the stringent *Moseley* standards. While the Court conceded that "such evidence may be difficult to obtain…whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation." **Id. at 433.**

The Plaintiff has not even attempted to establish the second element, irreparable harm. In the context of granting a preliminary injunction, an injury will only be considered irreparable if no adequate remedy for the injury exists at law. ***TeleRep Caribe, Inc. v. Zambrano*, 146 F. Supp. 2d 134, at 145.** This is a stringent test, met only when the detriment to the mark is so severe as to be immeasurable. In the instant case, GM cannot claim in good faith that some irreparable harm will befall them while awaiting trial which they have failed to notice or address

during the past forty (40) years. No damage can occur to the "Cadillac" mark when there has been no showing of consumer confusion about the origin of Defendant's products.

A balancing of the relative hardships of the Plaintiff and Defendant is the third point of inquiry when considering a preliminary injunction. It is fair to say that the passing of such a long period of time since Cadillac City, Inc. began doing business certainly tips the scales on this point. Certainly mild discomfort to GM does not justify complete devastation to Cadillac City, Inc.'s business. Loss of Cadillac City, Inc.'s trade name after building 30 years worth of business notoriety with its wholesale dealer customers would be a loss of its most valuable business asset. **Affidavit of Charles Karyanis, para's. 12 and 13.** It is for this same reason that Cadillac City, Inc. does not dilute or confuse the "Cadillac" mark. Cadillac City, Inc. has built its own strong business name that is unrelated to GM's "Cadillac" mark.

In citing *Manny's Porshop* where the court observed "it is difficult to discern how defendants will be injured by changing their name to 'Manny's' or 'Manny's Repair Shop,'" the Plaintiff suggested in **GM's Reply Memorandum** that Defendant change his name to 'Cambridge Used Cars.' Plaintiff has effectively demonstrated on behalf of the Defendant that, while 'Manny' could still retain the first word of his trade name that people remember and identify with the business, Cadillac City could not. While in *Manny's Porshop* the defendant's customers could still recognize the business name and therefore attribute the reputation built under the former name to the new trade name, such a result would be impossible in the instant case. If GM had brought their complaint in a timely fashion, as would have been possible exercising ordinary diligence, Cadillac City, Inc. would not have relied on GM's inaction in building their business. The court would not be asked to erase thirty (30) years of Mr. Karyanis' hard work to calm the nerves of this corporation.

16

The final element needed to justify a preliminary injunction, that it is in the interest of the public, is hardly worth discussing when Cadillac City, Inc. derives 90% of its business from dealer to dealer sales. As for the remaining 10%, at the risk of sounding repetitive, it is absurd to claim that the public cannot distinguish a BMW from a Cadillac, and thus needs protection from such confusion. It is clear that a preliminary injunction is neither fair nor legally justified in this case.

CADILLAC CITY, INC.

Dated: *November 12 2004*

By: *[signature]*
Edward George, Jr., Esq. (BBO# 189160)
Its Counsel
EDWARD GEORGE & ASSOCIATES
110 Florence Street, 2nd Floor
P.O. Box 393
Malden, MA 02148
Tel. #: 781-322-7575

## CERTIFICATE OF SERVICE

I, Edward F. George, Jr., counsel for the Defendant, Cadillac City, Inc. hereby certify that service of a true copy of the foregoing **Cadillac City, Inc.'s Reply Memorandum in Response to GM's Reply Memorandum in Support of Its Motion for Preliminary Injunction** has on November 12, 2004 (November 11th being Veterans' Day) been made upon the Plaintiff, General Motors Corporation, by delivering copies thereof to its counsel of record, by fax, as follows: Thomas P. McNulty, Esq. (and) Peter D. McDermott, Esq., Banner & Witcoff, Ltd. 28 State Street, 28th Floor, Boston, MA. 02109 at Fax # 617-720-9601 and to its co-counsel Gregory D. Phillips, Esq. Howard, Phillips & Andersen, 560 E., 200 S., Suite 300, Salt Lake City, Utah 84102 at Fax # 801-366-7706 and further by mailing copies thereof to each by U.S. Mail postage prepaid.

Date _November 12, 04_                          _[signature]_
                                                Edward F. George, Jr.