IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GENERAL MOTORS CORPORATION,** a Delaware corporation,<br><br>*Plaintiff,*<br><br>vs.<br><br>**CADILLAC CITY, INC.,** a Massachusetts corporation,<br><br>*Defendant.* | Civil Action No. 04-11926 REK<br><br><br><br>Judge Robert E. Keeton |

## GM's REQUEST TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff General Motors ("GM") hereby requests this Court to enforce, at the upcoming hearing set for August 30, 2005, the Settlement Agreement and Consent Judgment that were agreed to by the parties at the Mediation that was held on March 3, 2005 with Jeffrey Stern of Sugarman, Rogers, Barshak & Cohen (the "Mediation"). The law of this Circuit is well settled that courts favor settlement as a preferred alternative to litigation. *Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 853 (1st Cir.1987). Accord *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir.1990) ("it is the policy of the law to encourage settlements"); *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1015 (D.C.Cir.1985) ("[s]ettlement agreements are in high judicial favor"). Accordingly, when parties voluntarily enter into a settlement in principle, the courts should summarily enforce the agreement. *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1015 (D.C.Cir.1985) (diversity action case to enforce settlement agreement).

In support of GM's Motion, GM submits the following facts:

1.   At the Mediation, the parties "reached a settlement in principle" as acknowledged by both parties in the Joint Motion for Continuance of Status Conference Scheduled for April 26,

2005, attached hereto as Exhibit A. As set forth in the Joint Motion attached hereto as Exhibit A, the settlement was contingent on the City of Cambridge permitting defendant Cadillac City, Inc. ("Defendant") to change its name on its Used Car Dealer Class II License to "City Motor Group, Inc." Once the approval was obtained, the parties agreed at the mediation to execute the Settlement Agreement and Consent Judgment discussed and negotiated at the mediation with the assistance of the mediator, Jeffrey Stern, Esq., who assisted the parties in drafting and agreeing upon the language of the Settlement Agreement and Consent Judgment.

2.    Following the Mediation, on or about March 29, 2005, GM circulated the Settlement Agreement and Consent Judgment reflecting the language that the parties had discussed and negotiated at the mediation with the mediator, Jeffrey Stern, Esq.

3.    On or about April 5, 2005, Defendant filed Articles of Amendment with the Secretary of the Commonwealth by which Cadillac City, Inc. changed its corporate name to "City Motor Group, Inc." A copy of the Articles of Amendment is attached hereto as Exhibit B.

4.    On or about May 18, 2005, the Cambridge City License Commission approved Defendant's application to amend the Used Car Dealer Class II License to change Defendant's corporate name to "City Motor Group." A copy of the May 18, 2005 letter from the Cambridge License Commission is attached hereto as Exhibit C.

5.    The Court will recall from the Status Conference that was held on June 28, 2005, that although Defendant had already changed its corporate name with the Commonwealth and City of Cambridge, and was in the process of changing its signage, the Defendant attempted to renege on the settlement by stating that Defendant would refuse to sign the Settlement Agreement and would refuse to transfer the Internet domain names CADILLACCITY.COM and CADCITY.COM to GM unless GM paid Defendant additional compensation for the Internet domain names.

6.  This Court will recall that the parties agreed at the Mediation that in lieu of any compensation paid by GM to Defendant, GM would pay Defendant's share of the mediation expenses. Thus, GM paid Defendant's share of the mediation expenses in the amount of $2,095.00 which included the reimbursement of Defendant's retainer of $750.00. In other words, GM paid the entire cost of the mediation totaling $4,191.00. Attached hereto as Exhibit D is the March 4, 2005 letter from mediator Jeffrey Stern, Esq. This letter from Jeffrey Stern confirms the agreement discussed above – i.e., "the willingness of GM to cover the entire mediation fee, in lieu of any other financial claim [by Defendant]." This letter also confirms that the parties agreed upon a "revised draft agreement."

7.  The Court will also recall that at the June 28, 2005 hearing, the Court observed that "it appears to me that what's going on is you're [Defendant] attempting to back out of a settlement agreement." [Transcript at 22] The Court further made clear that Defendant's attempts to extract additional compensation from GM were "out of bounds. That's totally out of bounds." [Transcript at 21] The Court noted that Defendant's position was "out of bounds" because Defendant has not made any "claims for additional compensation . . . as part of the pleadings of this case." [Transcript at 21] "So your [Defendant's] position is one I cannot possibly sustain." [Transcript at 21-22]

8. The Court will also recall that Defendant asserted at the June 28, 2005 hearing that, (contrary to the evidence presented at the June 28, 2005 hearing that the Settlement Agreement was conditioned only upon Cambridge City's approving the name change on the City License, as set forth in paragraphs 1 and 4 above), that the settlement was also conditioned upon various financial institutions approving the name change, and that certain financial institutions would refuse to do business with Defendant if Defendant changed its corporate name. GM disagreed

3

with Defendant's assertion that the settlement was conditioned upon financial institutions, and pointed out to the Court that there was no evidence to support Defendant's assertion

9.   GM further argued that it defies logic to believe that a financial institution with a past relationship with Defendant would cease doing business with Defendant because of a name change except for the situation in which the financial institution erroneously believed that Cadillac City was an authorized Cadillac® Dealer. GM suggested that Defendant provide the names of any financial institutions that are refusing to do business with Defendant. At GM's suggestion, the Court ordered that Defendant provide GM with a list of financial institutions with whom Defendant was dealing, and the Court allowed GM to contact these financial institutions to test Defendant's assertions. [Transcript at 24]

10.   After some disputes about what information Defendant was required to provide GM, Defendant provided a list of eleven financial institutions. Defendant refused to provide sufficient contact information about the contact persons at the financial institutions forcing GM to spend several days in tracking down the contact persons at the eleven financial institutions.

11.   GM then contacted the various financial institutions. With the exception of one financial institution discussed below, not a single financial institution represented that it would cease to do business with Defendant if Defendant changed its name from "Cadillac City." *See* July 14, 2005 letter from GM's counsel to Cadillac City's counsel attached hereto as Exhibit E. The exception was HSBC Financial where "Cadillac City had an inactive account, and no master dealer agreement." In other words, Cadillac City was no longer doing business with HSBC Financial. But more importantly, the only reason that HSBC had done business with Cadillac City in the past was because HSBC erroneously believed that Cadillac City "was a Cadillac dealer affiliated with GM." *Id.* at p. 2. As GM explained to Cadillac City, this evidence

4

supports GM's claims of trademark infringement because it demonstrates actual confusion in the marketplace:

> As the First Circuit noted in Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8 (1st Cir. 2004):
>
>> Evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion. See 3 McCarthy § 23:13; see also Kos Pharms., Inc. v. Andrx Corp., No. 03-3977, 369 F.3d 700 (3d Cir. May 24, 2004) ("even a few incidents" of actual confusion are "highly probative of the likelihood of confusion" (internal quotation marks omitted)); Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002) ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely." (internal quotation marks omitted)).

Exhibit E hereto at p. 2.

12.     GM concluded the July 28, 2005 letter by stating:

> In short, there does not seem to be any basis for your client's assertion that financial institutions will not do business with him if he changes his name. Please inform us immediately of the name, address, and telephone number, including the specific person at any financial institution who claims that it will not do business with your client as a result of the name change. We do not believe that any financial institution is taking that position, but want to give your client the benefit of any doubt. If such an institution exists, please provide us the name, address, and telephone number on or before this Friday, July 29, 2005 so that we can take the deposition of such financial institution.

Exhibit E.

13.     Despite GM's request that Defendant provide the name of any financial institution that refused to do business with Defendant if Defendant changed its name, Defendant has not provided any such information. Thus, there are no financial institutions that refuse to do business with Defendant as a result of the name change.

14.     Attached hereto as Exhibits F and G, respectively, are the Settlement Agreement and Consent Judgment that were agreed to at the Mediation. GM has changed the dates set forth in the Consent Judgment to reflect the delay that Defendant has caused by refusing to honor

5

Defendant's agreement at the Mediation to execute the Settlement Agreement and Consent Judgment.

WHEREFORE, GM respectfully requests that the Court enforce the Settlement Agreement attached hereto as Exhibit F and enter the Judgment attached hereto as Exhibit G.

Dated:
  24 Aug 2005

BANNER & WITCOFF
Peter D. McDermott
28 State Street
28th Floor
Boston, MA 02109
Telephone: (617) 720-9600

HOWARD, PHILLIPS & ANDERSEN
Gregory D. Phillips
560 E. 200 South, Suite 300
Salt Lake City, Utah 84102
Telephone: (801) 366-7471
*Attorneys for General Motors*

## CERTIFICATE OF SERVICE

I, Peter D. McDermott., counsel for the Plaintiff, General Motors Corporation, hereby certify that service of a true copy of the foregoing **GM's REQUEST TO ENFORCE SETTLEMENT AGREEMENT** has this day been made upon the Defendant, Cadillac City, Inc., by mailing copies thereof to its counsel of record, by first class mail, as follows:

Edward F. George, Jr., Esq.
EDWARD GEORGE & ASSOCIATES
110 Florence Street, 2nd Floor
Malden, MA 02148
Tel: 781-322-7575
Fax: 781-322-1555

Date: August 24, 2005