UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GENERAL MOTORS CORPORATION,<br>A Delaware corporation,<br><br>*Plaintiff,*<br><br>vs.<br><br>CADILLAC CITY, INC.,<br>A Massachusetts corporation,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 04 cv 11926 REK |

MEMORANDUM IN OPPOSITION OF GM'S REQUEST TO ENFORCE
SETTLEMENT AGREEMENT

INTRODUCTION

Defendant City Motor Group, Inc., formerly known as Cadillac City, Inc., respectfully requests that this Court deny GM's Motion to Enforce Settlement Agreement, first because although the parties were in agreement on most major issues in the case at the close of Mediation, the parties expressly agreed that two (2) fundamental contingencies would have to occur before any settlement agreement was to be executed by the parties, one of which has not been satisfied. Secondly, the second contingency to a settlement agreement was never fulfilled. Third, GM's draft of a purported settlement agreement that GM drafted single-handedly and is now seeking to enforce (Exhibit F attached to GM's Request) does not reflect the agreement of the parties that was reached at the March 3, 2005 Mediation conducted by Jeffrey Stern (the "Mediation") on either contingent or non-contingent issues. Fourth, GM's Request seeks to

enforce a settlement agreement which GM alleges to have been reached in mediation, is in violation of the Mediation Agreement's confidentiality provisions. Fifth, GM's version of the settlement agreement, which it now seeks to have enforced is factually inaccurate and contradictory of its own allegations as is apparent from a comparison of same with **the draft settlement agreement prepared by counsel for City Motor Group, Inc., f/k/a Cadillac City, Inc., dated August 2, 2005, a copy of which is attached hereto as an enclosure with the letter dated August 26, 2005 from Edward F. George, Jr. and the other enclosures therewith, all attached as Exhibit A hereto.** Sixth, GM has provided City Motor Group, Inc. with inadequate notice of **GM's Request to Enforce Settlement Agreement** (GM's "Request") pursuant to F.R.C.P. Rule 6(d), which severely impeded City Motor Group's ability to obtain the supportive documents it would require to respond to the Request in a meaningful fashion.

While the Plaintiff is correct in its assertion that the law favors settlement agreements, a purported "settlement agreement" is not favorable if it does not comply with legal requirements for enforceability and is rather a reflection of only one party's wishes that were not assented to or adopted by the second party. **GM's Request to Enforce Settlement Agreement, Page 1.** Massachusetts Courts hold that, regarding settlement agreements, "a written draft which contains terms that differ markedly from those agreed to orally is unenforceable." ***Malek v. Verizon Communications, Inc. et ali*, 2004 U.S. Dist. Lexis 976; 175 L.R.R.M. 2233.** Therefore, where parties have an express oral agreement that two (2) contingencies must be fulfilled before an agreement will be enforceable, and when one party subsequently drafts and presents for enforcement a purported "Settlement Agreement" which contains terms not discussed or agreed to during settlement discussions, that draft is not enforceable as a settlement agreement.

In support of City Motor Group, Inc.'s Opposition, it respectfully submits the following:

2

## ARGUMENT

I. The Agreement "Reached" at Mediation Was Subject to Two Fundamental Contingencies.

At the Mediation on March 3, 2005, City Motor Group, Inc. and GM expressly agreed to two (2) contingencies to a Settlement Agreement, first, that Mr. Karyanis be able to change the name on his used car dealer licenses with the City of Cambridge from "Cadillac City, Inc." to another name, such as "City Motor Group, Inc." and second, that Cadillac City's banks and financial institutions accept the new corporate name (e.g. City Motor Group, Inc.) while still allowing Cadillac City to obtain dealer financing for its used car sales transactions. The agreement regarding these two (2) contingencies is corroborated by the mediator, Jeffrey Stern, Esq., who during a subsequent telephone conversation with Edward F. George, Jr., counsel for Cadillac City, Inc., confirmed that his notes indeed reflected an agreement between GM and City Motor Group, Inc. that these two (2) contingencies were prerequisites for the entry into a formal settlement agreement by the parties. During the telephone conversation, Mr. Stern also indicated to Mr. George that he would confirm this fact to GM's counsel, Gregory Phillips, Esq. GM has subsequently dropped their insistence on taking Mr. Stern's deposition as they sought to do at the last Status Conference before this court on June 28, 2005. **Attached as Exhibit B is a faxed letter from Jeffrey Stern, Esq. in which he confirms that the agreement reached by the parties at the Mediation on March 3, 2005 required the occurrence of the two (2) contingencies described above.** The letter from Edward F. George, Jr. to Gregory Phillips dated August 26, 2005 (Exhibit A attached hereto) describes the telephone conversation with Mr. Stern in further detail regarding his acknowledgement of the two (2) contingencies. GM takes the position in Paragraph 8 of its Request that the approval by the City of Cambridge to the name change on Cadillac City's dealers' licenses was the only contingency to a settlement agreement,

3

and says "GM disagree(s) with Defendant's assertion that the settlement was conditioned upon financial institutions, and pointed out to the Court that there was no evidence to support Defendant's assertion." (Page 4, top) Clearly, GM's position is incorrect.

    II.    <u>The Second Contingency to a Settlement Agreement, Namely Acceptance of a New Name by Cadillac City, Inc.'s Financial Institutions, Has Not Been Fulfilled.</u>

GM states in Paragraph 1 of its Request that the parties "reached a settlement in principle" (quoting the Joint Motion for Continuance of Status Conference) and then goes on to allege that the only contingency was the City of Cambridge permitting Cadillac City, Inc. to change its name on its used car dealer licenses. Both statements are misleading. **First, as is made clear above by the Mediator, Jeffrey Stern's letter dated August 29, 2005, there was another contingency, namely:**

> **"that the defendant would send letters to its financing agencies of the name change, and that they would agree to the name change, and agree to continue financing arrangements under the new name."**

**(Exhibit B, copy attached hereto, Page 2.)**

Second, the Joint Motion for Continuance of Status Conference goes on to say:

> "The parties are working with the City of Cambridge and various financial institutions to transition to a new name for the Defendant...Once and if approval is obtained from the City of Cambridge, the parties believe that they need at least an additional six weeks after the hearing on May 10, 2005 to finalize the settlement agreement."

(Exhibit A to GM's Request.)

GM's counsel is well aware that there was a second contingency and that that is what was referred to by the foregoing quote, namely acceptance of the new name by Cadillac City, Inc.'s financial institutions. In fact, GM acknowledges as much when it states in paragraph 11 of its

4

request that GM "contacted the various financial institutions" after attaching as Exhibit E to its Request a letter written by Attorney Phillips on July 28, 2005 in which he complains of "your client's lack of compliance in attempting to locate the individuals who informed your client that his name change to City Motor Group, Inc. would harm the financing relationship." This letter and the arguments based upon it are disingenuous and misleading for the following reasons:

    1. As evidenced by the letters dated July 14, 2005 and July 25, 2005, **both attached hereto as Exhibits E,** Cadillac City in fact not only fully complied with, but went beyond the requirements of this Court's Order from the bench that Cadillac City, Inc. disclose the names of its financial institutions to GM. Cadillac City provided the names of the institutions, their phone numbers, fax numbers and addresses, as well as the contact names of the bank representatives it deals with. (See copies of pages 1, 26, and 27 of the Transcript of this Court's Order on June 28, 2005, which is an enclosure to Exhibit A, attached hereto.) This was done in spite of GM's self-serving accusations to the contrary, as set forth in Mr. Phillips' letter of July 18, 2005 **(also in Exhibit E, attached hereto.)**

    2. As GM acknowledges in Mr. Phillips' letter of July 14, 2005, this Court ordered Cadillac City, Inc. to provide a list of its financial institutions **"so that GM could take the depositions of the persons who were allegedly telling your client that they would not provide financing to your client if he changes the name of his business to City Motor Group, Inc."** (Exhibit E, attached hereto.)

    3. GM has not taken any depositions, either of any of Cadillac City, Inc.'s financial institutions nor of the Mediator, Jeffrey Stern. Instead, and contrary to GM's stated purpose for its request, GM purportedly has conducted its own unilateral

5

interrogation of Cadillac City, Inc.'s financial institutions and reported to the Court its "findings" as if they should be given credence albeit that counsel for Cadillac City, Inc. has had no opportunity to cross-examine any of these people whose statements in any event were obviously made by telephone, not properly identified, and not under oath.

4. The entire contents of Paragraphs 11, 12, and 13 as set forth in GM's Request are pure, unadulterated hearsay, subject to no exception to the rule against hearsay evidence.

5. GM has engaged in a self-serving, blatant avoidance of the underlying concepts of verification, authentication and fairness which form the basis of the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

III. GM's Draft of a Purported Settlement Agreement Does Not Reflect the Agreement of the Parties On Either Contingent or Non-Contingent Issues

As the court stated in ***Malek v. Verizon Communications Inc., et ali,*** "parties either have a complete, enforceable settlement agreement, requiring no further negotiation on any material point, or they have no settlement agreement at all." ***Malek v. Verizon Communications Inc., et ali,* 2004 U.S. Dist. LEXIS 976 at 8.** (citing ***Clark v. Mitchell*, 937 F. Supp. 110 (D.N.H. 1996) at 114.**)

GM's assertion that the "Settlement Agreement and Consent Judgment" drafted by GM and sent to City Motor Group, Inc. on March 29, 2005, now being presented for enforcement, was reflective of the language that the parties had discussed and negotiated at the March 3, 2005 Mediation is completely erroneous. To the contrary, the draft of a purported settlement agreement created by GM and sent to City Motor Group, Inc. on March 29, 2005 (Exhibit F

6

attached to GM's Request) disregarded the fundamental contingencies to the "agreement in principle" formed by the parties, and was far more restrictive, overreaching, and formalistic than anything discussed or contemplated by the parties during the Mediation. Most importantly, the fact that the draft of a purported settlement agreement created by GM and sent to City Motor Group, Inc. on March 29, 2005 omitted the two (2) contingencies described in the first Argument (above) that the parties had expressly agreed to in Mediation, is confirmed by the mediator, Jeffrey Stern in his letter of August 29, 2005 (Exhibit B hereto) and as was confirmed early on by Edward F. George, Jr. as counsel to Cadillac City, Inc. in his letter dated April 21, 2005 to Gregory Phillips, Esq., which stated in part as follows:

> "With regard to your last draft of the Settlement Agreement, it suffers from a number of problems the most acute being that it fundamentally does not make all the other provisions contingent upon Charlie's success in the area of the name change with the City of Cambridge and his banks and funding sources. There are other issues which we have with the Agreement, but I will address those in a subsequent letter to you shortly."

**(Copy attached hereto as Exhibit C, Page 2.)**

A comparison of the draft of a purported settlement agreement prepared by Mr. George as counsel to Cadillac City, Inc. and forwarded by email to Mr. Phillips as counsel to GM on August 2, 2005, a copy of which is included with Mr. George's letter of August 26, 2005, attached hereto as Exhibit A, with the purported agreement which GM seeks to enforce clearly indicates there was no meeting of the minds on all material terms, even aside from the omission by GM of the two major contingencies. This conclusion is further confirmed by the letter dated August 9, 2005, addressed to Mr. George from Mr. Phillips, in which Attorney Phillips states:

> "Chuck Ellerbrock and I have carefully reviewed the proposed Settlement Agreement that you sent us. While GM is willing to consider some of your proposed changes, GM cannot agree to three (3) critical issues."

**(Copy attached hereto as Exhibit D, Page 1.)**

7

That letter clearly demonstrates negotiation was ongoing as late as August 9, 2005. For example it says: "GM insists on a Stipulated Permanent Injunction…" when the inclusion of a "Consent Judgment" as it appears in the draft of a purported settlement agreement sent by GM to Cadillac City, Inc. on March 29, was never discussed at mediation, nor agreed to by the parties.

IV. GM's Request to Enforce a Purported Settlement Agreement Goes Behind and Violates the Confidentiality Provisions of the Mediation Agreement.

Attached hereto **as Exhibit F** is a copy of the letter dated February 23, 2005 from Edward F. George, Jr. as counsel to Cadillac City, Inc., addressed to Jeffrey Stern, Esq. along with a copies of the Agreement for Mediated Negotiation as signed by Mr. George on behalf of Cadillac City, Inc. and its principal, Mr. Charles Karyanis and as signed by Attorney Phillips on behalf of his client, GM. Paragraph 4 of the said Agreement states in relevant part as follows:

> "All communications during the negotiation sessions (public and private) as well as the mediator's work product are confidential and privileged from disclosure in any proceeding. However, the work product of any particular party remains the sole product of that party and is not itself subject to this confidentiality provision or non-disclosure unless otherwise agreed upon in writing by the parties."

Clearly Attorney Phillips in demanding enforcement of a settlement agreement attached as Exhibit F to his Request, which he states in Paragraph 2 of said Request was circulated "on or about March 29, 2005," is not itself "work product" created by him during a mediation which occurred on March 3, 2005, over three (3) weeks earlier. And in any event it is "the sole product" of Attorney Phillips and his client, GM, and not an agreement.

V. GM's Version of the Purported Settlement Agreement is Factually Inaccurate and Contradicts its Own Allegations

GM's purported settlement agreement document (Exhibit F attached to GM's Request) is factually inaccurate and contradictory of its own allegations. GM seeks to force Cadillac City,

8

Inc. (which is now named "City Motor Group, Inc.") to do things it has already done, namely to change its corporate name (done), change its used car dealer licenses (done), change its letterhead and other business paperwork (done), all as set forth in detail in the letter dated August 26, 2005, a copy of which, with enclosures, is attached hereto as Exhibit A. **Mr. George's letter lists and attaches ten (10) specific examples of Cadillac City, Inc.'s completed voluntary efforts to assume and carry out its change to a new business/corporate name, all of which have been voluntarily performed without the benefit of any signed settlement agreement and, most importantly, without the benefit of a release signed by GM.**

All of the claims that GM has made pervading this litigation to the effect that Cadillac City, Inc. has attempted to confuse the consuming public by the use of the name "Cadillac City" have been contradicted not only by GM's own photographs, filed with GM's Motion for Preliminary Injunction (later withdrawn) showing no Cadillacs in the Defendant's used car lot but contradicted, more importantly, by the voluntary actions of Cadillac City, Inc. in changing its name and indicia to "City Motor Group, Inc."

At the inception of this case, this Court stated from the bench that Cadillac City, Inc. might consider changing the script in the name "Cadillac City" on its outdoor signs and further stated that doing so would not be to the prejudice of Cadillac City's position in this case. Cadillac City changed the signs and has gone beyond that suggestion to do everything in its power to change every connection its business has to the word "Cadillac" and, given it's limited resources as a small family held business, has done so as quickly as possible. **Counsel for Cadillac City, Inc. respectfully requests on its behalf that the same suggestion made by this Court regarding the signs be applied to all of City Motor Group, Inc. f/k/a Cadillac City's actions without prejudice or penalty.**

VI.  **GM's Failure to Provide Cadillac City, Inc. with Adequate Notice of its Request Pursuant to F.R.C.P Rule 6(d) was Prejudicial to Cadillac City, Inc. because it Gave Cadillac City, Inc. a Very Limited and Inadequate Time Period by Which to Respond to GM's Request.**

Finally, City Motor Group received only four (4) days notice that GM's Request (which is just another name for a Motion) would be heard on August 30 at 11:00, a.m. F.R.C.P. Rule 6(d) requires that notice of a written motion be served not later than five (5) days before the time specified for the hearing. F.R.C.P. Rule 6(a) states that "in computing any period of time prescribed or allowed by these rules…the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday…When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." In the instant case, GM's Request was mailed on Wednesday, August 24, 2005 , received on Thursday, August 25, 2005 and the hearing at which the Request would be heard is scheduled for Tuesday, August 30, 2005. Thus, GM provided Cadillac City, Inc. with only three (3) days notice, including August 25, 2005, August 26, 2005, (excluding August 27th and 28th, Saturday and Sunday, respectively) and August 29, 2005 prior to the hearing August 30, 2005. The failure to provide Cadillac City, Inc. with adequate notice is detrimental to Cadillac City, Inc. for the following reasons:

1.  Since GM's Request was not received until August 25th, 2005, by Cadillac City, Inc, counsel for Cadillac City, Inc. had only two (2) days to respond to GM's Request, after receiving the mail, the majority of which was spent

                locating and requesting the information and documentation necessary to support Cadillac City, Inc.'s Opposition to GM's Request.

2.      Cadillac City, Inc. was unable to obtain a letter from Jeffrey Stern confirming his corroboration of Cadillac City, Inc.'s position regarding the two (2) contingencies until late on the afternoon of Monday, August 29, 2005, the day before the hearing of August 30, 2005.

3.      Cadillac City, Inc. was unable to actually formulate a response until all of this documentation and information was collected and reviewed, which, as established above, did not occur until the afternoon prior to the date of the hearing.

4.      It was not possible for Cadillac City, Inc. to submit its Opposition in support of its position for review by the Court prior to the August 30, 2005 hearing at 11:00 A.M.

GM's decision to wait until three (3) business days prior to the August 30, 2005 date of the hearing before filing its Request was, given the period of time that has elapsed since the parties' Mediation on March 3, 2005, and given GM's ability to complete this document at an earlier time during the interim, unnecessarily tardy and unfairly prejudicial to Cadillac City, Inc.

For all of the foregoing reasons, City Motor Group, Inc. f/k/a Cadillac City, Inc. respectfully requests that this Honorable Court deny GM's Request to Enforce Settlement Agreement.

11

By: _____
Edward F. George, Jr.  BBO#: 189160
Counsel to Cadillac City, Inc.

EDWARD GEORGE & ASSOCIATES
P.O. Box 393
110 Florence Street
Malden, MA 02148
(781) 322-7575

8/30/05

Certificate of Service

I Edward F. George Jr. counsel for City Motor Group, Inc. formerly known as Cadillac City, Inc. hereby certify that I have served a copy of the foregoing Opposition upon each of the counsel for General Motors, Gregory D. Phillips, Esq. and Peter D. McDermott, Esq. by faxing copies thereof to each on August 29th, 2005 as soon as the initial draft was printed and prior to 5 pm on that date and by delivering copies with copies of all exhibits thereto to said counsel by hand on this 30th day of August, 2005, having been given three (3) business days notice to prepare this response.

By _____
Edward F. George, Jr.