# EDWARD GEORGE & ASSOCIATES

COUNSELLORS AT LAW
110 FLORENCE STREET, SECOND FLOOR
P.O. BOX 393
MALDEN, MASSACHUSETTS 02148
TEL (781) 322-7575
FAX (781) 322-1555
e.george@verizon.net

August 26, 2005

**BY FAX AND MAIL**

Gregory Phillips
Howard, Phillips & Andersen
560 E. 200 South, Suite 300
Salt Lake City, Utah 84102

Peter D. McDermott, Esq.
Banner & Witcoff
28 State Street, 28th Floor
Boston, MA 02109

### Re:   **General Motors Corporation v. Cadillac City, Inc.**

Dear Attorneys Phillips and McDermott,

In response to your letter of August 9, 2005 (and your earlier correspondence of July 14, 2005, July 18, 2005, and July 28, 2005) and in supplementation of my letters to you dated July 14, 2005 and July 15, 2005, let me reiterate to you that prior to your accusations, recriminations and demands, my client supplied you with the names, addresses, telephone numbers and office hours of all ten (10) of Cadillac City's credit companies and banks on July 14, 2005.

When you wrote in response on July 14, 2005 demanding to know as well "the name and address of the person at [each] financial institution" we wrote back on July 15, 2005 and supplied you with personal names for each institution as well. I also suggested to you in my letter of July 15, 2005 that you should consider deposing under F.R.C.P. Rule 30(b)(6) the person with the most knowledge of the decisions regarding financing arrangements with used car dealers and the effect of a name change for each. I did so because you told us in Court that you wanted to depose my client's financial institutions. Instead of taking depositions, you have proceeded to "contact all of the financial institutions" sub rosa, and state that you have "obtained information from most." You complain further that you are unhappy with what you have learned and continue to accuse my client of failing to comply with Judge Keeton's order and of trying to unnecessarily complicate the discovery process and increase GM's expenses."

In fact, what Judge Keeton "ordered" from the bench is set forth in the transcript of the hearing held on June 28, 2005. Judge Keeton ordered what you asked for, and this is what you asked for:

> "MR. PHILLIPS:   Your Honor, would it be possible for your Honor to order that they provide us, like within 10 business days, the list of the financial institutions so that we can take their depositions? I don't know if 10 business days is enough time for you, Ed, but …MR. PHILLIPS: So they'll provide us the names of their financial institutions that they claim are providing the financing by

# EDWARD GEORGE & ASSOCIATES

> the 15th of July. And then from the 15th of July through the end of August, we'll arrange to take their depositions. If that's agreeable?...THE COURT: All right."

(See pages 1, 26-27 of the Transcript, attached hereto.)

Clearly you have not only misquoted the Court, but it is GM, not Cadillac City, that has not done what you were ordered to do. What makes all of this all the more painful is that you have somehow allowed your client to become distracted from the gravamen of this case. In simple terms, GM contacted Mr. Karyanis in 1996 and asked him to stop using its trademark Cadillac Crest, which he agreed to do and did. GM claims in an Affidavit filed by Chuck Ellerbrock with the U.S. District Court dated October 28, 2004 that GM has had no knowledge of the existence of Cadillac City prior to May of 2004. In spite of the obvious and protracted acquiescence by GM, Charlie Karyanis has moved forward of his own volition since the first and only day of mediation on March 3, 2005, to convert his business name from "Cadillac City" to "City Motor Group, Inc." What is more, he has done so without a settlement agreement and without a release from your client's claims. Greg, I have to say that it appears to me, frankly, that the more Mr. Karyanis has steadfastly pursued his goal of dissociating his business from your client's alleged ownership of the Cadillac name, the more vindictive and litigious GM has become.

Your claim, also made to the Court at the last status conference, that Mr. Karyanis had settled the case with you with the sole contingency that he be able to change the name on his used car dealer licenses with the City of Cambridge and that there was no other contingency related to his banking relationships is simply not true. I called the mediator, Jeff Stern, immediately thereafter, and he confirmed to me that in fact his notes indicated two (2) contingencies, the second of which was indeed the acceptance of a new corporate name, i.e. "City Motor Group, Inc." by Cadillac City's banks and financial institutions. Mr. Stern advised me that he told you that as well, and you have subsequently dropped your insistence on taking his deposition.

On August 2, 2005 I sent you a redrafted settlement agreement which, unlike your latest draft of June 27, 2005, acknowledges that Cadillac City is no longer known by that name, but has changed its name both with the Secretary of State and with the City of Cambridge to City Motor Group, Inc. Although no settlement agreement remotely resembling the one you seek to enforce (and in fact no settlement agreement at all except for attorneys' notes regarding certain gross concepts) was written during the mediation, you seek to enforce a settlement based upon your own very specific, formalistic and overly punitive terms, which first surfaced as contained in your first draft of the document dated March 29, 2005 (nearly four (4) weeks later).

Attached to this letter are further examples of my client's continued pursuit on a voluntary basis of the identification of his business with the new trade name City Motor Group, Inc., as follows:

1.  Mr. Karyanis' new business card using the name City Motor Group, Inc.
2.  City Motor Group, Inc.'s new form for Agreement and Bill of Sale
3.  City Motor Group, Inc.'s new business certificate with the City of Cambridge

# EDWARD GEORGE & ASSOCIATES

4. City Motor Group, Inc.'s fax coversheet
5. City Motor Group, Inc.'s motor vehicle purchase contract.
6. The signed estimate from Jim Did It Signs & Awnings Corp. for a change to new exterior signage in the total amount of $7,596.75 which Mr. Karyanis has accepted on August 3, 2005 and upon which he has made a $2,500 deposit.

In addition to the above referenced attachments, Mr. Karyanis has taken the following additional action to effect the identification of his business with the new trade name:

7. Mr. Karyanis has changed the AT&T telephone listing from Cadillac City to "City Motor Group, Inc."
8. Mr. Karyanis has requested that Verizon Yellowpages change the next phone book to read "City Motor Group, Inc." and has requested that Verizon change the internet yellow pages to read "City Motor Group, Inc." as well.
9. Finally, Mr. Karyanis has requested that his insurance policies, dealer plate registrations and all other indicia of business trade name be changed to City Motor Group, Inc.
10. Enclosed are copies of confirmations from the Cambridge License Commission that the two (2) used car dealer's licenses have been changed to City Motor Group, Inc.

Given all of this, the threatening nature of your recent correspondence, especially your letter of August 9, 2005, is simply not comprehensible to us. As outlined in **my draft settlement agreement of August 2, 2005** (copy enclosed), GM can simply pick up the domain names of CADCITY.COM and CADILLACCITY.COM when they expire on October 19, 2005 and January 3, 2006, respectively. My client did not agree to "sell them" to GM in return for your clients' unilateral offer to pay his share of the mediation fee, as you wrongfully claim. Your client has refused to make any meaningful contribution towards the transition costs that my client has incurred in spite of the fact that his costs of conversion to the new corporate and business trade name of "City Motor Group, Inc." from the name which he has used since at least 1980, "Cadillac City, Inc.," has cost many, many multiples of the one (1) day's mediation fee (of which your client was obligated to pay 50% in any event.)

**Be that as it may, it seems unjust and inequitable for GM to be demanding anything further from my client at this point beyond what I have offered in my redraft of the settlement agreement of August 2, 2005 (copy attached hereto).**

Very Truly Yours,

Edward F. George, Jr.
EDWARD GEORGE & ASSOCIATES

cc: Charles Karyanis
Jeffrey Stern, Esq.

3

JUN28GEN (1).txt

1

1        UNITED STATES DISTRICT COURT

2        DISTRICT OF MASSACHUSETTS

3              No. 04-cv-11926-REK

4

5
    GENERAL MOTORS CORPORATION,
6              Plaintiff

7    vs.

8
    CADILLAC CITY, INC.,
9              Defendant

10

11                 *********

12

13         For Motion Hearing Before:
          Honorable Robert E. Keeton
14

15
          United States District Court
16          District of Massachusetts (Boston.)
          One Courthouse Way
17        Boston, Massachusetts 02210
          June 28, 2005
18

19                 ********
20

21
          REPORTER: RICHARD H. ROMANOW, RPR
22           Official Court Reporter
          United States District Court
23    One Courthouse Way, Room 3507, Boston, MA 02210
               (617) 737-0370
24

25

☐                                              2

1            A P P E A R A N C E S

2

3    GREGORY D. PHILLIPS, ESQ.
      Howard, Phillips & Andersen, P.C.
4      560 East 200 South, Suite 300
      Salt Lake City, Utah 84102
                                      Page 1

JUN28GEN (1).txt

19    copy of, that was written by Jeff Stern, the mediator, in which
20    he says that:  "He's concerned that any disclosure, in the
21    absence of an agreement between counsel, could violate our
22    agreement as well as the Massachusetts statute on
23    confidentiality of mediation communications."  I think that
24    that statute has already been breached by the attachment of
25    Exhibit D to their status report, which I had to respond to,

▯                                                                      31

1     and that's what I was trying to say, Judge.  I'm not asking you
2     to order them to pay anything in the mediation.  They asked us
3     to give up a lot and we said, "Fine, we'll do it if we can
4     accomplish two things.  We would like you to pay us
5     something."  That was in the mediation.  We're not asking you
6     to --
7                    THE COURT:  I understand.  I'm making no ruling.
8                    MR. GEORGE:  Okay.
9                    MR. PHILLIPS:  Your Honor, would it be possible for
10    your Honor to order that they provide us, like within 10
11    business days, the list of the financial institutions so that
12    we can take their depositions?  I don't know if 10 business
13    days is enough time for you, Ed, but --
14                   MR. GEORGE:  Excuse me, Judge.
15                   (Discussion with client.)
16                   MR. GEORGE:  The 15th of July, your Honor.
17                   MR. PHILLIPS:  So they'll provide us the names of
18    their financial institutions that they claim are providing the
19    financing by the 15th of July.  And then from the 15th of July
20    through the end of August, we'll arrange to take their
21    depositions.  If that's agreeable?
22                   MR. GEORGE:  Do you also intend to take Jeff
23    Stern's deposition?

Page 26

JUN28GEN (1).txt

24          MR. PHILLIPS:  Yes.

25          THE COURT:  All right.

□                                                                    32

1               MR. GEORGE:  So, I guess, I might need to file some

2     sort of emergency motion on that, Judge.

3               THE COURT:  Emergency motion saying what?

4               MR. GEORGE:  To preclude his deposition because

5     he's a mediator.  There's a mediation confidentiality statute

6     that says -- as I read it, his deposition should --

7               THE COURT:  I am not ruling on the admissibility,

8     for whatever purpose it may be offered, but I overrule the

9     objection to his deposition being taken.

10              MR. GEORGE:  Okay.  So you'll consider that then on

11    the 30th, Judge?

12              THE COURT:  What?

13              MR. GEORGE:  We'll take the deposition and then

14    you'll consider my objection again on the 30th?

15              THE COURT:  I'll consider whatever filings are made

16    on both sides.  All right.  Is there anything else we can do

17    today?

18              MR. PHILLIPS:  No, your Honor.  Thank you for your

19    time.

20              THE COURT:  All right.  Thank you.  We'll be in

21    recess.

22              (Ends, 12:45 p.m.)

23

24

25

□                                                                    33

1                    C E R T I F I C A T E

2



## CITY MOTOR GROUP, INC.

### CHARLES KARYANIS, SR.

CITY MOTOR GROUP, INC.
186 MSGR. O'BRIEN HWY.
CAMBRIDGE, MA 02141

PHONE 617.547.0692
CELL 617.293.6295
FAX 617.864.4228

# AGREEMENT AND BILL OF SALE

BY AND BETWEEN                    DATE _____

**CITY MOTOR GROUP, INC.**

186 Msgr. O'Brien Highway
Cambridge, Massachusetts 02141
Office line: 617-547-0692 • Fax Line : 617-864-4228

A
N
D

_____
_____
_____

HEREAFTER CALLED DEALER

The Seller hereby agrees to sell and the Purchaser hereby agrees to Purchase upon the terms and conditions hereby set forth, the following described used motor vehicle. It being  mutually agreed that there are no representations, promises, verbal understandings or agreements pertaining to this sale or this contract except those stated herein.

The said used motor vehicle  is accepted by the Purchaser in its present condition with its present equipment and without guarantee and purchased wholesale for retail purposes. We will not assume responsibility for damages done to motor vehicles being delivered to purchaser's premises.

| MAKE | MODEL | YEAR | SERIAL NUMBER | SALE PRICE | STOCK NO. |
|------|-------|------|---------------|------------|-----------|
|      |       |      |               |            |           |

MILEAGE_____

### ODOMETER MILEAGE STATEMENT

*Federal regulations require you to state the odometer mileage upon transfer of ownership. An inaccurate or untruthful statement may make you liable for damages to your transferee, for attorney fees, and for civil or criminal penalties, pursuant to sections 409, 412 and 413 of the Motor Vehicle Information and Cost Savings Act of 1972  (Pub L. 92-513, as amended by Pub. L. 94-364).*

Purchaser's
Check #_____

☐ I hereby certify that to the best of my knowledge  the odometer reading as stated above reflects the actual mileage of the vehicle described above.

**CITY MOTOR GROUP, INC.**

☐ I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of designed mechanical odometer limit of 99,999 miles/kilometers of the vehicle described above.

BY_____

☐ I hereby certify that to the best of my knowledge the odometer as stated above is NOT the actual mileage of the vehicle described above and should not be relied upon.

ACCEPTED        SELLER

☐ I hereby certify that the odometer of said vehicle was not altered, set back, or disconnected while in my possession, and I have no knowledge of anyone else doing so.

PURCHASER

☐ I hereby certify that the odometer was altered for repair or replacement purposes while in my possession, and that the mileage registered on the repaired or replacement odometer is identical to that before such service.

☐ I hereby certify that the odometer was altered for repair or replacement purposes while in my possession, and that the repaired or replaced odometer was incapable of registering the same mileage, that it was set to zero, and that the mileage on the original odometer or the odometer before repair was.

RESALE CERT. NO._____

_____ miles/kilometers

_____ SELLER

_____ (BUYER) hereby certify that I/we have received a copy
of the above mileage statement

13/210

*THE COMMONWEALTH OF MASSACHUSETTS*

*CITY OF CAMBRIDGE*

*BUSINESS CERTIFICATE*

*IN CONFORMITY WITH THE PROVISIONS OF CHAPTER ONE HUNDRED AND TEN, SECTION FIVE OF THE GENERAL LAWS, AS AMENDED THE UNDERSIGNED HEREBY DECLARE(S) THAT A BUSINESS IS CONDUCTED UNDER THE TITLE OF:*

City Motor Group, Inc.

*IS CONDUCTED AT* 182 Monsignor O'Brien Hwy and 184-186 Monsignor O'Brien Hwy.

617-547-0692
BUSINESS PHONE

*TYPE OF BUSINESS:* Auto Sales

*PLEASE CIRCLE ONE:*        NEW BUSINESS           RENEWAL

*BY THE FOLLOWING NAMED PERSON(S):*   (INCLUDES   CORPORATE   NAME   AND   TITLE   IF CORPORATE OFFICER)

| FULL NAME | RESIDENCE |
|---|---|
| Charles Karyanis-President | 4 Hutchinson Lane, Quincy MA 02171 |
| Susan Karyanis-Treasurer | 4 Hutchinson Lane, Quincy MA 02171 |

*SIGNATURE:*

*DATE:* April 7, 2005                    *COUNTY:* Middlesex

*PERSONALLY APPEARED BEFORE ME THE ABOVE NAMED*

See Below

*AND MADE OATH THE FOREGOING STATEMENT IS TRUE.*

Charles Karyanis
Susan Karyanis

NOTARY/CLERK
MY COMMISSION EXPIRES: 10/25/2009

*IN ACCORDANCE WITH THE PROVISION OF CHAPTER 337 OF THE ACTS OF 1985 AND CHAPTER 110, SECTION 5 OF MASS. GENERAL LAWS, BUSINESS CERTIFICATES SHALL BE IN EFFECT FOR FOUR YEARS FROM THE DATE OF ISSUE AND SHALL BE RENEWED EACH FOUR YEARS THEREAFTER. A STATEMENT UNDER OATH MUST BE FILED WITH THE CITY CLERK UPON DISCONTINUING, RETIRING, WITHDRAWING OR CHANGE OF LOCATION OF BUSINESS OR RESIDENCE FROM SUCH BUSINESS OR PARTNERSHIP.*

APR 1 2 2005

A TRUE COPY
ATTEST

City Clerk

April 12, 2009
CERTIFICATE EXPIRES



186 MSGR. O'BRIEN HIGHWAY          CAMBRIDGE, MASSACHUSETTS 02141

OFFICE (617) 547-0692                    FAX (617) 864-4228

FACSIMILE TRANSMITTAL:

TO: _____

COMPANY:_____

FAX#:_____

FROM: _____

DATE:_____

PAGES:_____

FAX#: 617-864-4228
OFFICE#:  617-547-0692

NOTES/COMMENTS: _____

_____

_____

_____

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above via the U.S. Postal Service. Thank you.

**MOTOR VEHICLE PURCHASE CONTRACT**

## CITY MOTOR GROUP, INC.
186 MONSIGNOR O'BRIEN HWY.
CAMBRIDGE, MA. 02141    617-547-0692

| DATE | | ORDER NO. | | STOCK NO. | | | SALES REPRESENTATIVE | | | |
|---|---|---|---|---|---|---|---|---|---|---|

| PURCHASER'S NAME(S) "I or Me" | | | | | ADDRESS | | | | |
|---|---|---|---|---|---|---|---|---|---|

| CITY | | STATE | | ZIP CODE | | TELEPHONE NUMBERS | HOME | | BUSINESS |
|---|---|---|---|---|---|---|---|---|---|

ENTER MY (    )   NEW ☐   FORMER USE   DEMONSTRATOR ☐   POLICE CAR ☐
ORDER FOR   (QUANTITY)   USED ☐   (If applicable)   FORMER LEASED CAR ☐   TAXICAB ☐    FORMER DAILY RENTAL ☐

| Year | Make | | Model Name | | Body Type | | Model No. | Transmission Standard ☐ Automatic ☐ | (Speeds) | Cyl. | Pass. | Doors |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Vehicle Identification No. | | | Color 1st 2nd 3rd | | Interior 1st 2nd 3rd | | Top | Odometer mi. ☐ km. ☐ | | Approx. Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|

| **TRADE-IN** | Year | | Make | | | | Social Security No. | |
|---|---|---|---|---|---|---|---|---|

| MODEL | | Type | | Color | | | Date of Birth | |
|---|---|---|---|---|---|---|---|---|

| V.I.N. | | | | | | | Employed ID No. | |
|---|---|---|---|---|---|---|---|---|

This vehicle carries an express warranty. Purchaser may obtain a written copy of such warranty from the dealer upon request. Purchaser will receive the written warranty at time of delivery.

| Odometer | | (mi. ☐   /km. ☐) | | Email Address | |
|---|---|---|---|---|---|

| Transmission ☐ Standard (Speeds) ____ ☐ Auto | | | Price of Unit | $ |
|---|---|---|---|---|

| No. of Cyl. | | Pass. | | Doors | |
|---|---|---|---|---|---|

| Title No. | | | State | |
|---|---|---|---|---|

**REGISTRATION FEE/TITLE FEE SALES TAX**
(2 checks required)

| PREVIOUS OWNER | | Additional Equipment | |
|---|---|---|---|

| CITY/STATE/ZIP | | Application for Registration | |
|---|---|---|---|

| **LIENHOLDER** | | Application for Reg.   New   Transfer | |
|---|---|---|---|

| Address | | Registration No. | | | |
|---|---|---|---|---|---|

| City/State/Zip | | Registration Fee | $ | |
|---|---|---|---|---|

| Acct. No. | | Check No. | | Title Fee | $ | |
|---|---|---|---|---|---|---|

| Balance Due $ | | | Mass. Sales Tax | $ | |
|---|---|---|---|---|---|

| Additional Information Vehicle Purchased | (Pay to Commonwealth of Massachusetts) | |
|---|---|---|

| **LIENHOLDER** | | | |
|---|---|---|---|

| Address | | | |
|---|---|---|---|

| City/State/Zip | | | |
|---|---|---|---|

*Sales Tax amount is included in right hand column only when dealership check issued in payment of Mass. Sales Tax.

| **INSURANCE CO.** | | | |
|---|---|---|---|

| Agent/Branch | | | |
|---|---|---|---|

| Address/City | | | |
|---|---|---|---|

In the event I fail to take delivery of the vehicle purchased by me within forty-eight (48) hours after I have been notified by you that it is ready for delivery and pay the total contract price in the manner indicated, my deposit in the amount of $ ___ may, at your option, be retained by you to compensate you in whole or in part for any loss sustained by you. Your right to retain my deposit shall be in addition to and not instead of any other right or remedy provided by applicable law including, without limiting the generality of the foregoing, the sale of the car or truck I agree to purchase. If the amount of my deposit exceeds actual damages sustained by you, you will promptly refund the difference to me.

( _____ )
Purchaser's Initials

THIS CONTRACT IS NOT BINDING UPON EITHER THE DEALER OR THE PURCHASER UNTIL THE FOLLOWING CONDITIONS ARE MET:

(1) THE CONTRACT IS SIGNED BY DEALER OR HIS/HER AUTHORIZED REPRESENTATIVE.
(2) PURCHASER PROVIDES THE DEALER WITH A VALID TITLE FOR HIS/HER TRADE-IN VEHICLE. A "SALVAGE TITLE" IS NOT ACCEPTABLE UNLESS DISCLOSED TO DEALER AT EXECUTION OF THIS CONTRACT.

OTHER: _____

The front and back of this order comprise the entire agreement between the dealer and purchaser, and no other agreement or understanding has been made or entered into.

X_____
Purchaser's Signature

X_____
Co-Purchaser's Signature

X_____
Approved Authorized Dealer Representative

| | | |
|---|---|---|
| 1. Total Price | | $ |
| 2. Credit/Over Allowance | $ | |
| 3. Trade-In Allowance | $ | |
| 4. Trade Difference (line 1 - lines 2 & 3) | | $ |
| 5. *Mass. Sales Tax (   % of line 4) | | $ |
| 6. Title Preparation | | $ |
| 7. Documentary Preparation (Itemize) | | $ |
| 8. Other | | $ |
| 9. TOTAL CONTRACT PRICE (total of lines 4, 5, 6, 7, and 8) | | $ |
| 10. Balance Due on Trade-in | | $ |
| 11. Total lines 9 and 10 | | $ |
| 12. Deposit | $ | |
| 13. Amount to be Financed | $ | |
| 14. Cash due on Delivery | $ | |
| 15. TOTAL PAYMENT (total of lines 12, 13, and 14) (line 15 must equal line 11) | | $ |

FORM 0-7198
FAX 978-352-7726

1-800-922-8777

Forms Supplied By
G.B. AUTOWARE, INC.

JIM DID IT SIGNS & AWNINGS CORP.

# Estimate

465 Cambridge St.
Allston, MA 02134
(617) 782-2410

| DATE | ESTIMATE NO. |
|------|--------------|
| 8/3/2005 | 201005 |

NAME / ADDRESS

City Motor Group
Charles Karyanis
186 O'Brien Highway
Cambridge, MA  02141

| TERMS | PROJECT |
|-------|---------|
| 33% Deposit | New Signs/Awnings |

| DESCRIPTION | QTY | RATE | TOTAL |
|-------------|-----|------|-------|
| Two new 4' x 8' Lexan faces in pole sign. | 2 | 492.50 | 985.00 |
| Recover awning over office w/ new logo, black fabric/white letters. | | 1,500.00 | 1,500.00 |
| New awning over door, 12' x 2' x 3'. | | 1,250.00 | 1,250.00 |
| Two new awnings on rear building per sketch. | 2 | 1,750.00 | 3,500.00 |
| Sales Tax | | 5.00% | 361.75 |

*Includes lights in (4) awnings*

*Deposit $2500⁰⁰*

*8/3/05*

Please allow 4 weeks for completion .

| TOTAL | $7,596.75 |
|-------|-----------|

SIGNATURE



# CAMBRIDGE LICENSE COMMISSION
**•831 MASSACHUSETTS AVENUE• CAMBRIDGE, MA. 02139**
**TELEPHONE NO: (617)349-6140**

MAY 2 4 2005

THE COMMONWEALTH OF MASSACHUSETTS
CITY OF CAMBRIDGE

NUMBER: 15

FEE: $ 100.00

USED CAR DEALER'S LICENSE - CLASS II.
TO BUY AND SELL SECOND-HAND MOTOR VEHICLES

In accordance with the provisions of Chapter 140 of the General Laws with
amendments thereto CITY MOTOR GROUP, INC., D.B.A.
is hereby licensed to buy and sell second-hand motor vehicles at
00182 MSGR OBRIEN HGWY
on premises described as follows:
12 X 25 FOOT 70 X 20 X 52 WITH BUILDING IN THE REAR BLOCK
12 X 25 FOOT FOR 15 CARS.

THIS LICENSE EXPIRES January 0ι, 2006.

THIS LICENSE MUST BE POSTED IN A CONSPICUOUS PLACE UPON THE PREMISES.

Henry Breen

Board of License Commissioners

🖾 *Printed on recycled paper*

**CAMBRIDGE LICENSE COMMISSION**
•831 MASSACHUSETTS AVENUE• CAMBRIDGE, MA. 02139
**TELEPHONE NO: (617)349-6140**

MAY 2 4 2005

THE COMMONWEALTH OF MASSACHUSETTS
CITY OF CAMBRIDGE

NUMBER: 11                                    FEE: $ 100.00

USED CAR DEALER'S LICENSE - CLASS II.
TO BUY AND SELL SECOND-HAND MOTOR VEHICLES

In accordance with the provisions of Chapter 140 of the General Laws with
amendments thereto CITY MOTOR GROUP, INC., D.B.A.
is hereby licensed to buy and sell second-hand motor vehicles at
00184 MSGR OBRIEN HGWY
on premises described as follows:
HOT TOPPED AREA CONTAINING 5,000 SQ. FT. INCLUDING A CEMENT
BLOCK BUILDING USED AS AN OFFICE TO ACCOMODATE 22 CARS.

THIS LICENSE EXPIRES January 01, 2006.

THIS LICENSE MUST BE POSTED IN A CONSPICUOUS PLACE UPON THE PREMISES.

Henry Breen

Board of License Commissioners

*Printed on recycled paper*

## E F George

**From:** "E F George" <e.george@verizon.net>
**To:** "Greg Phillips" <gdp@hpalaw.com>
**Sent:** Tuesday, August 02, 2005 12:25 PM
**Attach:** Settlement Agreement.doc

GREG sorry I just sent you your own document by mistake so here is my redarft of the settlement agreement.  ED

## E F George

| | |
|---|---|
| **From:** | "E F George" <e.george@verizon.net> |
| **To:** | "Greg Phillips" <gdp@hpalaw.com> |
| **Sent:** | Tuesday, August 02, 2005 12:20 PM |
| **Attach:** | Cadillac City Settlement Agreement.doc |

GREG attached is our revised settlement agreement in draft form. I have tried to be as "matter of fact" as possible and have cut out all of the superlatives and congratulatory language regarding GM as it just is not necessary. And I have inserted realistic deadlines which separate those things that my client can do by the end of this calandar year (like change the signs, letterhead, e ali) and those things which more or less co-incide with his fiscal year which does not end until July 31, 2006 (like change insurance policies, ads, et ali). And there is no sense in demanding a name change either in Boston or in Cambridge as he has already done that VOLUNTARILY-so I just memorialized it in the agreement and he has promised not to revert to the use of anything using any alleged GM mark. So honestly I think it is a pretty fair agreement.

Unfortunately, due to the tone of your last two letters I have concerns  as to whether GM is acting in good faith at this point. Since we have offered all along and have now memorialized our offer to do everything your client wants of substance (albeit on a slightly different time frame-doing some things earllier and others later) one has to wonder why there is anything left to argue about. Your client seems stuck on the concern that my client is trading on his name and I think we should have diffused that by now. Beyond that, I will reserve my response to your said letters until such time as it is necessary to comment further. We really would like to just settle this and move on, Greg. I will look forward to hearing from you. ED

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made this _____ day of August 2005 (the "Effective Date"), by and between General Motors Corporation, a Delaware corporation ("General Motors"), on the one hand, and City Motor Group, Inc. formerly known as Cadillac City, Inc., a Massachusetts corporation ("City Motor Group"), on the other hand.

WHEREAS, General Motors has asserted various claims against City Motor Group in a lawsuit pending in the United States District Court in and for the District of Massachusetts captioned *General Motors Corporation v. Cadillac City, Inc.*, Civil Action NO. 04 cv 11926 REK (the "Action"); and

WHREAS, General Motors manufactures and markets automobiles, parts and accessories under the trademarks CADILLAC with the CADILLAC stylized script and the CADILLAC LOGO and the CADILLAC CREST, both registered and unregistered (hereinafter the "GM Marks"); and

WHEREAS, City Motor Group, prior to its name change from Cadillac City, Inc. and its predecessors have been using the business name "Cadillac City" since at least the 1970's but has since the 1980's operated a used car dealership selling automobile brands predominantly other than those owned by General Motors, such as Audi, Lexus, Volkswagen, BMW and others and City Motor Group denies any wrongdoing, denies all liability to General Motors and by entering into this Agreement does not admit to any wrongdoing or liability but does so to avoid the expense of litigation as well as to do business under a trade name that more accurately describes its sales inventory;

WHEREAS, the parties now desire to resolve their dispute and fully settle the claims asserted in the Action;

NOW THEREFORE, in consideration of the above premises and the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Agreement to Discontinue Use of the GM Marks**. Pursuant to the terms of this Agreement set forth below, City Motor Group, its officers, directors, agents, employees, and anyone acting under their control, shall discontinue any and all uses of the GM Marks on or in connection with the marketing and sale of any product, service, advertisement, video, promotional literature, promotional telecast, broadcast, signage, on the Internet, or otherwise subject however to and in accordance with the time frames set forth herein below.

More specifically, City Motor Group agrees to the following:

(a) **Use of Internet Domain Names**. City Motor Group shall cease all uses of Internet domain names that use or incorporate any variations of the GM Marks, including but not limited to, the domain name CADILLACCITY.COM and CADCITY.COM at such time as the current registrations expire and further agrees not to renew either of its registrations of said Internet domain names. City Motor Group hereby warrants and represents to General Motors that it has not and will not register any other domain name using the GM Marks and will not impede or interfere with General Motors registration of said domain names at such time as City Motor Group's registrations of same expire.

(b) **Transition to a New Domain Name**. Until the current expirations of said Internet domain names, i.e. the expiration of CADCITY.COM on October 19, 2005 and of CADILLACCITY.COM on January 3, 2006, City Motor Group will cause the Internet domain names CADCITY.COM and CADILLACCITY.COM to "rollover" to its new Internet domain names which it has already registered, namely "CITYMOTORGROUP.COM" and "EMOTORGROUP.COM". General Motors hereby agrees, recognizes and acknowledges that it has no claim to or any interest in either of said new Internet domain names and further agrees that it shall not claim any such interest in the future.

(c) **Agreement Regarding Use of Business Name**.

(i)     City Motor Group has as of April 12, 2005 filed Articles of Amendment with the Secretary of the Commonwealth of Massachusetts changing the name of the corporation to "City Motor Group, Inc." from "Cadillac City, Inc." without any Court order or intervention. City Motor Group hereby agrees on behalf of itself and its officers, directors, agents, employees and anyone acting under their control that they will not amend or change its Corporate name to include the use of the GM Marks at any time in the future nor will they use the GM Marks at any time in the future with regard to the formation or naming of any other corporation or entity under their control.

(ii)    City Motor Group has also filed an application with the Cambridge License Commission to amend its two (2) Used Car Dealer Class II licenses for its business premises located at 182 and 184-186 Monsignor O'Brien Highway in Cambridge, all without the order or intervention of any Court and as of May 18, 2005 has received approval of said amendments for a change of the Corporate name to "City Motor Group". City Motor Group hereby warrants and represents to General Motors on behalf of itself and its officers, directors, agents, employees, and anyone acting under their control that they will not amend or change the Corporation's dealer licenses to include the use of the GM Marks at any time in the future nor will they use the GM Marks at any time in the future with regard to the licensing or operation of any used car dealership under their control.

(iii)    By or before December 31, 2005, City Motor Group agrees to remove and/or modify all signage of any kind in connection with its business premises at 182 and 184-186 Monsignor O'Brien Highway in Cambridge, Massachusetts that use or incorporate the GM Marks and may replace said signs with those using "City Motor Group, Inc." or such other trademark(s) as do not use or incorporate the GM Marks. General Motors hereby warrants and represents to City Motor Group that it has and claims no interest in the business or tradenames "City Motor Group" or "EMotor Group".

(iv)    By or before December 31, 2005, City Motor Group agrees to discard (shred) and cease all use of blank (unused) letterhead, billhead, envelopes, invoicing, business cards and all other business related paperwork which is not the subject of third party publication contracts, insurance contracts or other requirements outside of City Motor Group's control. City Motor Group shall have the right to retain and preserve any and all such business related paperwork as have been used in the ordinary course of its business prior to that date as archives for at least seven (7) years.

(v)    City Motor Group agrees to request in writing that all telephone directories, Internet directories or other listings or advertisements for "Cadillac City, Inc." or any other GM Marks or variation of any GM Marks used or incorporated by City Motor Group change said listings or advertisements to "City Motor Group" (or such other tradename(s) as do not use or incorporate any variation of the GM Marks) for their next regularly scheduled publication; City Motor Group further agrees to change the name for its bank accounts, dealer license plates, insurance policies (including "garage liability" and "worker's compensation" policies) for "Cadillac City, Inc." to "City Motor Group, Inc." (or such other tradenames as do not use or incorporate any variation of the GM Marks) as these items come up for renewal in the ordinary course of business; all of said changes as listed above will be accomplished no later than July 31, 2006. City Motor Group hereby warrants and represents to General Motors on behalf of itself and its officers, directors, agents, employees and anyone acting under their control that they will not use or incorporate any variation of the GM Marks in connection with the Corporation's business operations or affairs after July 31, 2006.

(d)  **Agreement Regarding Titles.** General Motors further agrees that to the extent that City Motor Group holds the title of any vehicle in the name "Cadillac City" that City Motor Group is not required to change the title certificate and may at any time hereafter transfer such title(s) to third party purchasers by signing the transfer in the name of Cadillac City, Inc. Moreover, nothing in this Agreement shall prevent City Motor Group from endorsing checks or other forms of commercial paper made payable to "Cadillac City" over to "City Motor Group" or any other entity and depositing the checks or paper as such. General Motors hereby agrees that the endorsement of checks or paper

3

made payable to "Cadillac City" over to "City Motor Group" or any other entity does not constitute a breach of this Agreement.

(e) **Agreement Regarding Use of "Formerly Cadillac City" to Answer Telephone.** By or before December 31, 2005 City Motor Group shall cease using the name "Cadillac City" to answer its telephone. GM agrees that until said date City Motor Group may use the phrase "City Motor Group formerly Cadillac City" to answer its telephones.

**2. Ownership of GM Marks; Agreement Not to Challenge Validity.** City Motor Group hereby acknowledges, agrees, and assents to, General Motor's exclusive ownership of the GM Marks and the validity of the GM Marks and the validity of the registrations therefore. City Motor Group represents and warrants to General Motors that City Motor Group shall not at any time in the future take any action to assert any claim of any kind relating to the exclusive rights of General Motors in and to the GM Marks or the validity of the GM Marks or registrations, or oppose, attempt to cancel, object to or otherwise challenge any application or registration for any of the GM Marks. City Motor Group further represents and warrants that City Motor Group shall never register or apply for registration anywhere any mark, name, or trade dress whether as a trademark, service mark, trade name or domain name, that includes or incorporates any of the GM Marks.

**3. Consent Judgment.** The parties agree to the entry of the "Consent Judgment and Order of Dismissal" attached hereto as Exhibit A and to jointly stipulate to and move the Court for the entry of same.

4. Release of Claims for Damages. General Motors, on behalf of itself and its successors and assigns, hereby agrees to release and discharge City Motor Group, its owners, shareholders, officers, directors, employees, agents, attorneys, insurers, and representatives from any and all claims for damages, costs, and attorneys' fees arising from or in any way related to those claims set forth or which could have been set forth by General Motors in the Action, including but not limited to the claims of infringement and dilution by City Motor Group of the GM Marks up through and including the date of execution of this Agreement. This paragraph, however, shall not release City Motor Group from liability for any infringement or dilution of the GM Marks by City Motor Group after the specific dates set forth in this Agreement by which City Motor Group has agreed to those restrictions set forth above. City Motor Group further agrees to indemnify and hold harmless general Motors from any and all allegations and claims asserted by third parties against General Motors resulting from City Motor Group's use of the name "Cadillac City, Inc." or the domain names CADILLACCITY.COM and/or CADCITY.COM, or any other use of the GM Marks. This indemnity by City Motor Group shall not apply to any warranty or product liability allegations or claims for personal injury or property damage asserted by third parties against General Motors.

**5. Further Action.** The parties shall execute and deliver all documents, provide all information, and take or forbear from all such action as may be necessary or appropriate to achieve the purposes of this Agreement.

4

**6. Integration**. This Agreement constitutes the entire agreement between the parties relating to the settlement of the Action and shall supersede all prior agreements, negotiations, or understandings pertaining hereto. No covenant, representation, warranty, or condition not expressed in this Agreement will affect or be deemed to interpret, change, or restrict the express provisions hereof. The parties further agree and stipulate that this Agreement was jointly drafted.

**7. Severability**. In the event that any condition, covenant, or other provision herein contained is held to be invalid or void, the same shall be deemed severable from the remainder of this Agreement and in no way shall affect any other covenant or condition herein contained. If such condition, covenant, or other provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.

**8. Breach of the Agreement**. The parties agree and acknowledge that any breach of this Agreement will cause irreparable harm to the non-breaching party, and that the non-breaching party shall be entitled to both a preliminary and permanent injunction against the breaching party, as well as any other remedy allowed by law. If a party believes that a breach of this Agreement exists, such party, prior to taking any action in the courts, will send to the other party a demand letter explaining in detail the nature of the breach and allowing the other party thirty (30) days to cure the alleged breach.

**9. Authority to Sign**. The parties and their representative signing this Agreement hereby acknowledge and represent that the individuals signing this agreement are duly authorized agents of the parties hereto and are authorized and have full authority to enter into this Agreement on behalf of the parties for whom they are signing.

**10. Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, heirs, and assigns.

**11. Modifications**. This Agreement may not be amended, modified, superseded, or canceled, and none of the terms, covenants, representations, warranties, and conditions may be waived except by written instrument. In the case of waiver, the party waiving compliance must sign the waiver. Failure of any party at any time or times to require strict performance of any provision hereof shall not in any manner affect the right of such party at a later date to enforce the same.

**12. Governing Law**. This Agreement shall be governed by and construed in accordance with the substantive laws of the Commonwealth of Massachusetts without regard to Massachusetts' conflicts of law provisions.

**13. Advice of Counsel**. In executing this Agreement, City Motor Group acknowledges that City Motor Group has read the entire Agreement, has consulted with counsel and understands that the terms hereof are contractual and not a mere recital, and agrees that City Motor Group is not relying upon any statement or representation made by General Motors, its counsel, or any other agents or employees of General Motors

concerning any matter, and is relying upon its own judgment and upon advice of its counsel.

14. Future Disputes. The parties agree to the continuing jurisdiction of the United States District Court for the District of Massachusetts to resolve any and all issues relating to this Agreement.

15. Counterparts. This Agreement may be executed in counterparts, and each counterpart, once executed, shall have the efficacy of a signed original. True and correct copies, including facsimile copies of signed counterparts, may be used in place of originals for any purpose.

**AGREED TO:**

**CADILLAC CITY, INC.**

By: _____

Its: _____

**GENERAL MOTORS CORPORATION**

By: _____

Its: _____

6